498 So.2d 801 (1986)
Gary D. THRASH, et al.
v.
MAYOR AND COMMISSIONERS OF the CITY OF JACKSON.
No. 55693.
Supreme Court of Mississippi.
November 19, 1986.
*803 Gary D. Thrash, Jackson, for appellants.
Gay Dawn Horne, Jackson, for appellee.
Before ROY NOBLE LEE and HAWKINS, P.JJ., and ROBERTSON, J.
ROBERTSON, Justice, for the Court:

I.
This rezoning controversy arises out of the efforts of a private soccer organization to develop a multi-field soccer complex designed to attract statewide and every professional competition utilizing a flood prone fifty acre tract of land in northeast Jackson, Mississippi. Objectors, homeowners in adjacent and nearby areas, claim that the rezoning will adversely affect the values of their properties. They cite noise and traffic.
The city zoning authorities considered the matter and ordered the rezoning. The Circuit Court then affirmed, as do we, for the reasons articulated below.

II.
On or about July 13, 1982, the Northeast Jackson Soccer Organization, Inc. (hereinafter referred to as "NEJSO") filed an application to rezone the property in question from an R-1 (single family resident use)[1] to a special/use recreational district.[2] Subject property comprises approximately fifty acres of undeveloped northeast Jackson land, all of which is located within the 100 year flood plain, the northeastern corner being within the flooding of Purple Creek.
Pursuant to the provisions of Miss. Code Ann. § 17-1-17 (Supp. 1986) the City Zoning Committee heard the application on the 9th of September, 1982, and received testimony from the staff of the City Planning Board, the NEJSO, and nearby homeowners and residents opposed to the rezoning, many of this latter group of Objectors being among the Appellants here. This is a summary of the testimony:
The Zoning Administrator, in presenting the basic facts relative to the petition, noted that the subject site encompassed approximately 50 acres of land and was currently vacant and heavily wooded. He noted that the entire site was located within the 100 Year Flood Plain with the northeastern corner being within the floodway of Purple Creek. He described the surrounding land uses and zoning, noting that Purple Creek abutted the subject property to the north and east. He informed the Committee that a single-family home is at the eastern end of Westbrook Road within an R-1 (Single-Family) Residential District. He pointed out that the majority of the property on the south side of Westbrook Road, immediately south of the site, was currently vacant with the exception of Westbrook Stables, located within an R-1 (Single-Family) Residential District. Southwest of the site is the Brookside Place, Part 11 subdivision within an R-1 *804 District. Further to the southwest, west and northwest are single-family homes within an R-1A (Single-Family) Residential District. He informed the Committee that the nearest comparable use of the proposed development was north of the subject property on the east side of Old Canton Road. He noted that the majority of Westbrook Road in front of the site is currently gravel with asphalt pavement west of the site to Old Canton Road.
The Zoning Hearing Committee found that there was a community need for additional recreational facilities in the immediate area of the subject property. The Committee noted that significant development had occurred in Northeast Jackson since the adoption of the Zoning Ordinance in 1974. The Committee recommended that an adequate screen or buffer area be provided along the west property line as determined by the City Site Plan Review Committee. The Committee also recommended that an adequate street be paved to facilitate the anticipated traffic which would be generated by the proposed development. In the end, the Zoning Hearing Committee was of the opinion that the City Planning Board should recommend to the City Council approval of the petition requesting rezoning from R-1 (Single-Family) Residential District to Special Use/Recreational District, subject to the above stated recommendations.
At its regular meeting on September 22, 1982, the Jackson City Planning Board concurred with the recommendation of its Zoning Hearing Committee by a vote of eleven for and none against, with one abstention, and recommended to the City Council that the petition be approved. Objectors Thrash, et al, then appeal to the Jackson City Council and again urged denial of the rezoning permit. The City Council, after one continuance at the request of counsel for Objectors to the petition, finally held a hearing on the matter on December 8, 1982. Subsequently on January 5, 1983, by a unanimous vote of the City Council, the ordinance rezoning the said property was approved.
Aggrieved by the decision of the Jackson City Council, the Appellants herein, Objectors below, appealed to the Circuit Court of Hinds County, Mississippi, which on March 19, 1984, affirmed the Council's decision. The case is here now for review, whereupon the City relies upon the following scenario in support of its rezoning ordinance.
(1) the fact that the subject property is among property west of and adjacent to the Pearl River which is designated on the City's current Future Land Use Plan Maps as being intended for public and semipublic uses (i.e. special uses); (2) the fact that the proposed soccer complex was deemed to require Special Use zoning because of its size, unique characteristics and public or semipublic uses; (3) the fact that the entire 50 acres involved in this rezoning is located within the 100 year Flood Plain and was flooded in the 1979 Easter Flood; (4) the fact that the northeastern corner of said area is situated within the floodway of Purple Creek; (5) the fact that it is a generally accepted planning policy for flood plain areas to be used for recreational purposes; (6) the fact that property located within a floodway can never be developed for residential uses; (7) the fact that the City's Parks & Recreation Recovery Action Program adopted in 1981 encourages such community recreation services; (8) the fact that developed recreational areas in northeast Jackson are minimal; (9) the fact that a significant amount of development has occurred within northeast Jackson within the last few years, thereby limiting the amount of desirable land for recreational uses and increasing the need for such recreational area; (10) the fact that NEJSO's program is open to the general public; and (11) the fact that NEJSO's master plan includes a playground and picnic area which will be open to the general public.
Brief of Appellees at 6-7.
We proceed to the assignments of error.

*805 III.
Objectors' principal assignment of error is that the evidence supporting rezoning is insufficient to meet our familiar change and need standard, referring to the rule in this state that, assuming no mistake in the original zoning, reclassification may be had only where there has been a change in the character of the neighborhood to such an extent as to justify the rezoning, coupled with a public need for the rezoning,[3]see, e.g., Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 503 (Miss. 1986); City of Jackson v. Aldridge, 487 So.2d 1345, 1347 (Miss. 1986); Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736, 740 (Miss. 1980). In challenging the evidence Objectors rely heavily upon the rule that proof of change and need must be by clear and convincing evidence. Wright v. Mayor and Commissioners of City of Jackson, 421 So.2d 1219, 1222 (Miss. 1982); Sullivan v. City of Bay St. Louis, 375 So.2d 1200, 1201 (Miss. 1979).
Objectors' focus is misdirected. Rather than concentrating upon the burden of proof before the municipal zoning authority  a matter wholly appropriate for emphasis there  Objectors here must, if they are to prevail, direct their attention to our scope of review. The Jackson City Council has expressly found that there was before it clear and convincing evidence of both change in the neighborhood and need for rezoning. Our concern is identification of the circumstances under which we might disturb this finding.
The point of beginning is recognition that zoning is a governmental function legislative in nature, a premise we have articulated with varying verbiage on dozens of occasions. See, e.g., Northwest Builders, Inc. v. Moore, 475 So.2d 153, 155 (Miss. 1985); Woodland Hills Conservation Association v. City of Jackson, 443 So.2d 1173, 1182 (Miss. 1983); Robinson Industries v. City of Pearl, 335 So.2d 892, 895 (Miss. 1976); Currie v. Ryan, 243 So.2d 48, 52 (Miss. 1971); Adams v. Reed, 239 Miss. 437, 445, 123 So.2d 606, 609 (1960). By reason of this premise, our review of the burden of proof is necessarily different than where we consider on appeal the action of a trial court, another judicial body.
The point has been made in Woodland Hills:
This burden of proof does not operate as in a trial. Because at its core the rezoning process remains legislative in nature, our enforcement of a burden of proof is strained at best. We are not here concerned with the situation where the party bearing the burden in reality bears the risk of losing his case should he fail to introduce at the hearing evidence of the existence of certain facts. The rezoning tribunal has a responsibility first to act in the public interest. It may draw upon its knowledge of the community and the area as well as the applicant's proof.
443 So.2d at 1182.
This duty of the municipal zoning authorities, acting legislatively, to "look out the window" has been affirmatively recognized in at least three other recent decisions of this Court. Broadacres, Inc. v. City of Hattiesburg, Et Al, 489 So.2d 501, 504-05 (Miss. 1986); City of Jackson v. Aldridge, 487 So.2d 1345, 1347 (Miss. 1986); Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1327-28 (Miss. 1982).
Against this backdrop, we have repeatedly recognized that we have no authority to disturb the legislative action of the municipal zoning authorities where the point in controversy is "fairly debatable".[4]Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 505 (Miss. 1986); Mayor and Commissioners of City of Jackson v. Wheatley Place, Inc., 468 So.2d 81, 84 (Miss. 1985); City of New Albany v. Ray, 417 So.2d 550, 552-53 (Miss. 1982); Killegrew v. City of Gulfport, 293 So.2d 21, 22 *806 (Miss. 1974); Howie v. Autrey, 209 So.2d 904, 905 (Miss. 1968); Paine v. Underwood, 203 So.2d 593, 596 (Miss. 1967); Sanderson v. City of Hattiesburg, 249 Miss. 656, 163 So.2d 739, 741 (1964); City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660, 663 (1962). In other words, we will not substitute our judgment for that of the municipal zoning authorities unless the rezoning decision clearly is arbitrary, capricious and wholly unreasonable. Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 503 (Miss. 1986); City of Jackson v. Aldridge, 487 So.2d 1345, 1347 (Miss. 1986); Taquino v. City of Ocean Springs, 253 So.2d 854, 855 (Miss. 1971); Ridgewood Land Company v. Moore, 222 So.2d 378, 379 (Miss. 1969); Ballard v. Smith, 234 Miss. 531, 107 So.2d 580, 586 (1958); W.H. Holcomb, Inc. v. City of Clarksdale, 217 Miss. 892, 65 So.2d 281, 284 (1953).
These notions, as all know, emanate from that venerable sextegenarian, Village of Euclid v. Amber Realty Co., 272 U.S. 365, 388, 395, 47 S.Ct. 114, 118, 121, 71 L.Ed. 303, 311, 314 (1926); see Woodland Hills Conservation Association, Inc. v. City of Jackson, 443 So.2d 1173, 1181-82 (Miss. 1983). The fundamental teachings of Euclidian zoning were incorporated into law of this state sixty years ago when our legislature ordained this exercise of the police power to promote the "health, safety, morals or the general welfare of the community". Miss. Code Ann. § 17-1-3 (1972). Also incorporated were Euclid's limitations upon judicial review of legislative actions.
The City of Jackson, as other municipalities, employs zoning as a means to Euclidian societal ends. In exchange for his acceptance of certain limitations upon his right to use his real property as he pleases, see Andrews v. Lake Serene Property Owners Association, 434 So.2d 1328, 1331 (Miss. 1983), the citizen acquires the assurance that nearby properties will not be put to noxious and incompatible uses. See Mayor and Commissioners of City of Jackson v. Wheatley Place, Inc., 468 So.2d 81, 83 (Miss. 1985). On the other hand, our zoning laws contemplate dynamic communities, recognizing the inevitability, if not the desirability, of change. We are concerned that such change be orderly, balancing the community's utilitarian need for growth and the individual's interest in maintaining the economic and aesthetic value of his property. Woodland Hills Conservation Association, Inc. v. City of Jackson, 443 So.2d 1173, 1179 (Miss. 1983).
Today, as ever, we are faced with the complaint of nearby homeowners that the value of their properties will be diminished by development of the proposed soccer complex. We listen with empathy for we know that the changes in law not adversely affecting the value of someone's property are few and far between. This petty larceny of its police power[5] is one of the inevitabilities of organized society. The trick is to avoid governmental action effecting grand larceny, legal bulwarks against which, of course, are the takings and just compensation clauses of federal and state constitutions. U.S. Const.Amdts. V and XIV; Miss.Const. art. 3, § 17 (1890); see San Diego Gas & Electric Company v. City of San Diego, 450 U.S. 621, 633-34, 646-61, 101 S.Ct. 1287, 67 L.Ed.2d 551, 561, 569-79 (1981); Arverne Bay Construction Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587 (1938).
Another recurring problem  also present here  is that, unless government employs the police power to engage in petty larceny of the value of Objectors' property, it will effect grand larceny of Proponents',[6] for *807 there appears no reasonably valuable use to which the 50 acre tract may be put unless the present zoning classification be relaxed.
Applying these standards and accordingly limiting the scope of our inquiry in the context of the case at bar, we have no authority but to affirm. On the question of need, the record amply demonstrates an absence of soccer fields and attendant facilities in the Northeast Jackson area. It is within our actual and judicial knowledge that recent years have seen a substantial increase in participation in the sport of soccer by the young people of Jackson as well as many other communities of this state. One could almost go so far as to say the existence of the need for additional soccer facilities is beyond debate.
The evidence on the question of change is a bit closer. The principal changes cited are the substantial growth and development of Northeast Jackson, which in turn has generated the need for additional soccer facilities, and the 1979 Easter flood which for all practical purposes has made the area in question unsuitable for residential development. This latter point is critical. The City Council's rezoning ordinance is, in effect, a determination that as a result of the flood problems which have come to light since adoption of the 1974 Zoning Ordinance, subject property has itself changed so that it may no longer reasonably be put to the principal use for which it has heretofore been zoned. We consider a change such as this within the contemplation of our change and need rule.
Having in mind the fairly debatable/arbitrary and capricious standard of review stated above, it is our judgment that we should defer to the decision of the municipal zoning authorities. In doing so we note the determination of the City Council that the proposed use is not substantially incompatible with the single family residential developments inhabited by Objectors. The assignment of error is denied.

IV.
Objectors assign as error various claimed procedural deficiencies in the proceedings before the city zoning authorities.
First, Objectors claim that the zoning application failed to set out in detail the change in the character of the neighborhood and the public need for zoning, all allegedly in violation of Section 1904.01.1 of the City Zoning Ordinance. Second, Objectors claim that there was a failure to submit proper site and development plans for consideration by the zoning committee, said to have contravened Section 1404.01 of the City Zoning Ordinance. Third, Objectors argue that the September 9, 1982, hearing before the Zoning Committee was attended by less than a quorum of four members. Finally, Objectors claim variances from procedures established in Article 20 of the City Zoning Ordinance in connection with the appeal of this matter to the Jackson City Council.
The City, in its brief, not surprisingly, denies that there were any such procedural irregularities. The operative question, however, is not so much that as it is identification of the proper authority for deciding whether there were any such procedural irregularities. Here again we reiterate that zoning is a legislative function and that the City Council and its City Planning Board and Zoning Committee function in a legislative capacity. The procedural rules and regulations found in the City Zoning Ordinance are in aid of the City's performance of its legislative zoning function. With two exceptions to be noted below, it is the City which is vested with final authority for determining whether its procedural requisites have been met or, if it pleases, waiving them. See White v. Gautier Utility District of Jackson County, 465 So.2d 1003, 1016 (Miss. 1986) and People v. Elkin, 196 Misc. 188, 80 N.Y.S.2d 525, 529 (1948).
The first exception concerns those cases wherein the municipal zoning authorities may be said to have transgressed some important limitation or procedure imposed by state law. City of Jackson v. Freeman-Howie, *808 Inc., 239 Miss. 84, 121 So.2d 120 (1960); see generally Miss. Code Ann. §§ 17-1-1, et seq. (Supp. 1985). None of Objectors' procedural complaints fall within this exception, as each is premised solely upon the Zoning Ordinance of Jackson, Mississippi, adopted May 29, 1974, as amended.
The other exception appears where the procedural deficiencies may be said to have contravened a citizen's due process rights. Objectors proceed under this exception for in the end they claim that the City's circumvention of its procedural requirements has deprived them "of due process of law as guaranteed by the Constitutions of the United States and the State of Mississippi". Brief of Appellants, p. 6. The point is repeated in Objectors' Rebuttal Brief at page 8. Objectors cite neither authority nor logic in support of their argument that their due process rights have been offended.
Without attempting to be all inclusive, we consider it beyond debate that the essence of the due process rights, if any, guaranteed to Thrash and the other Objectors is reasonable advance notice of the substance of the rezoning proposal together with the opportunity to be heard at all critical stages of the process. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 873 (1950); Wolff v. McDonnell, 418 U.S. 539, 563-566, 94 S.Ct. 2963, 2978-2979, 41 L.Ed.2d 935, 955-57 (1974); Barrett v. Ballard, 483 So.2d 304, 305 (Miss. 1985). The record abundantly reflects that Objectors in fact had ample advance notice. They appeared before the Zoning Hearing Committee of the Jackson City Planning Board, personally and through counsel, and were given full opportunity to present any and all matters they wished. Similarly, when the matter was presented to the Jackson City Council on the question of whether the rezoning ordinance would be adopted, again Objectors were given full and fair opportunity to present their views.
We find nothing in the record or the briefs remotely suggesting a contravention of due process rights secured to these Objectors. Whether there was compliance with other procedural rules not implicating due process considerations is a matter committed to the authority of the Jackson City Council in its legislative capacity and are not subject to review here. These assignments of error are denied.

V.
In view of the disposition we have now made of the issues discussed in Sections III and IV above, we should address no further points presented by the parties. The judgment of the Circuit Court of Hinds County is affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., and DAN M. LEE, J., specially concur.
HAWKINS, Presiding Justice, specially concurring:
This controversy arose over the efforts of landowners to rezone their property in the flood plain of Purple Creek, no longer suitable for permanent buildings, so as to permit organized sports and games.
I concur in affirming this case because in my view there had been a material and substantial change in the area sought to be rezoned, albeit unique and by act of nature. The property was no longer suitable for any permanent buildings. Thus, this case falls within the guidelines of Mayor and Commissioners of Jackson v. Wheatley Place, Inc., 468 So.2d 81 (Miss. 1985); Board of Aldermen of Bay Springs v. Jenkins, 423 So.2d 1323 (Miss. 1982); Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736 (Miss. 1980); Cowan v. Gulf City Fisheries, Inc., 381 So.2d 158 (Miss. 1980); Sullivan v. City of Bay St. Louis, 375 So.2d 1200 (Miss. 1979); Underwood v. City of Jackson, 300 So.2d 442 (Miss. 1974).
I would not intimate, however, that under the rubric of "legislative power" the municipal or county authority in a rezoning *809 case can ignore the guidelines as announced in Cloverleaf Mall, Ltd. v. Conerly and a host of other well-reasoned opinions of this Court on this issue. If it is the purpose of the majority to emasculate these salutary guidelines, I think the Court is making a mistake it will have cause to regret.
DAN M. LEE, J., joins this opinion.
NOTES
[1] 602.01 R-1 Single-Family Residential District: The purpose of this district is to provide areas for the development of low density, single-family residential uses in protected surroundings. It is the intent of this Ordinance that these districts should be located in the suburban areas of the City where the environment is conducive to this type of use and also in other established single-family residential areas as a means to ensure their continuance.
[2] Article XI Special Use District Section 1101 Purpose of District The purpose and intent of the Special Use District zoning classification is to permit the City Council the right to establish needed zoning districts for a number of specific types of land use development, which do not fit compatibly into the established zoning districts because of their size, unique characteristics, or institutional nature.
[3] A useful discussion of the approach to rezoning incorporated into our law appears in Gladden, The Change or Mistake Rule: A Question Of Flexibility, 50 Miss.L.J. 375 (1979).
[4] The "fairly debatable" standard of judicial review is considered in Gladden, The Change Or Mistake Rule: A Question Of Flexibility, 50 Miss. L.J. 375, 387-88 (1979).
[5] For this phrase we credit Justice Oliver Wendell Holmes, Jr. See Roberts, Mining With Mr. Justice Holmes, 39 Vand.L.Rev. 287, 291 n. 23 (1986) and accompanying text.
[6] In Herbert v. Board of Supervisors, 241 Miss. 223, 232, 130 So.2d 250, 253 (1961) we observed "Zoning regulations may incidentally confer a benefit upon some and place a burden upon others, ... ." 130 So.2d at 253. Thanks in large part to the 1979 Easter Flood subject property has become unsuited for residential or even conventional commercial development, and the property was flooded again in 1983. As Objector Sam Barcellona, an area resident, conceded, "The use of this [property] is very, very limited." [R.68] Refusal to rezone might well effect grand larceny of the owners of subject property.