529 So.2d 625 (1988)
Emmett LUTER
v.
Betty L. HAMMON.
No. 57346.
Supreme Court of Mississippi.
July 20, 1988.
*626 Stephen E. Gardner, Stephen W. Rimmer, Young, Scanlon & Sessums, Jackson, for appellant.
Ronald L. Whittington, Guy, Whittington & Ott, McComb, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This is a rezoning case. City authorities have rezoned from residential to commercial certain undeveloped properties lying between a business enterprise and a residence and generally surrounded by commercial properties in downtown Tylertown, Mississippi.
On appeal, the Circuit Court reversed, holding that the rezoning proponents have not shown enough proof of change of circumstances in the neighborhood. Our review of the record convinces us that there was enough evidence of a change and as well a public need for the rezoning so that the rezoning decision falls within that category we label "fairly debatable". The decision is thus insulated from judicial interference.
The judgment of the Circuit Court is reversed and rendered.

II.
A brief perusal of the maps reflect a familiar scene: the gradual disappearance of downtown residential land use and conversion to commercial uses. This process takes place in small towns like Tylertown, as well as in our larger cities. Hammon's is one of four residences left in an area surrounded by commercially zoned properties.
Our subject is a vacant lot near Tylertown's central business district, owned by Emmett Luter and inherited from his recently *627 deceased father, Hosea Luter. The parcel at issue has heretofore carried an R-2 (single family residential) zoning classification, although it has never been used as such. Adjacent to the property at issue, Luter owns another lot which has long held a C-1 (neighborhood commercial) zoning classification under Tylertown's 1966 Zoning Ordinance. Luter and his father before him have for years operated a wholesale plumbing and electrical supply business known as "Luter's Supply" on this lot.
On the other side of the disputed lot is the residence occupied by Betty L. Hammon, today's Appellee. Hammon's residence has been zoned R-2 under the 1966 Zoning Ordinance.
Tylertown's authorities proposed to change the zoning on Luter's vacant lot from R-2 to C-1, and public notice was given thereof. Hammon protested and filed a written objection. Further written protests were received from the other three residential property owners in the area: Inez Ball, Leon Duncan and Jerry Lawrence.
Luter stated that he plans to use the property in his business, primarily as a place to store pipe and to be used as a truck turnaround. He agreed to maintain unused a twenty foot buffer zone between his property and Hammon's and to work to create a nicer appearance on his lot.
On February 5, 1985, the matter was heard and the Tylertown Mayor and Board of Aldermen responded with a series of findings and conclusions, beginning with a careful description of the area in controversy.
The ... area of contention lies in two city blocks. The boundaries of the western block are Beulah Avenue (or U.S. Highway 98) on the North, Adams Street on the West, North Railroad Avenue on the South, and Simmons Street on the East. Luter's Supply, a wholesale plumbing and electrical supplier, currently operates its offices, warehouses and storage yards in the Western portion of this block, which part of the block is zoned C-1, the Luter's Supply operation taking up approximately the western two-thirds or three-fourths of the block. Four single family residences are located on the Eastern side of this block, the Northernmost residential lot being located at the intersection of Beulah Avenue and Simmons Street, and the other three residences being on lots contiguous to each other along Simmons Street, the southern most of said residential lots being occupied by the residence of Mrs. Betty Hammon. From the Southern line of Mrs. Hammon's property and along Simmons Street to Railroad Avenue, there is a vacant lot owned by Mr. Hosea Luter. It is the zoning of this corner lot that is the contention in this block. This lot and all the other four lots occupied by residences and facing Simmons Street are presently zoned R-2, single-family district, but the corner lot which is in contention is proposed under the new zoning map to be zoned C-1.
In the end the Mayor and Board rezoned Luter's property C-4 (general commercial), instead of C-1. In so doing they announced:
In making our decision on this matter, we have considered all the testimony taken at the hearing, each of the documents introduced into evidence, and our own intimate knowledge of and familiarity with our distinctive community and its citizens.
The Mayor and Board then justified their rezoning decision.
We have considered the recent development, or lack of it, in the neighborhood surrounding the disputed area... .
... To the East along North Railroad Avenue, no development has taken place West of Lampton Street except the construction of a lumber warehouse at the Northwest intersection of Lampton Street and North Railroad Avenue. Along Beulah Avenue, a nursery and daycare center has been established at the Southwest intersection of South Collins Street and Beulah Avenue and a law office has been established at the Southeast corner of Simmons Street and Beulah Avenue. On the North side of Beulah Avenue a fast food restaurant and *628 an insurance office have been developed in the block between South Collins Street and Adams Street....
The increased commercial development along Beulah Avenue, the development of the remaining Luter's Supply property as a center of commercial activity, and the lack of recent residential development in the neighborhood persuade us that the portion of the disputed property lying between Conerly Street and Simmons Street should be zoned C-1 neighborhood commercial district and that portion of the disputed property between Simmons Street and Adams Street belonging to Hosea D. Luter and all his property West of Adams Street should be zoned for commercial use, but we are further persuaded that the appropriate zoning classification would be C-4 general commercial district rather than C-1 neighborhood commercial district. [Emphasis supplied]
Betty L. Hammon promptly appealed to the Circuit Court of Walthall County, Mississippi. After reviewing the Bill of Exceptions, the documents, exhibits and photographs and having considered the briefs of counsel and oral argument, the Circuit Court by judgment entered March 14, 1986, reversed and ordered that the subject property be restored to its residential zoning classification under the 1966 Zoning Ordinance. The Circuit Court found that the proponents of rezoning "had failed to meet the necessary burden of proof to rezone the above described parcels." The judgment of the Circuit Court has now been appealed to this Court.

III.
The Town of Tylertown has taken no appeal from the judgment of the Circuit Court. Instead, Emmett Luter, as a taxpayer of Tylertown and as the owner of the subject property, has prosecuted this appeal, seeking reinstatement of the rezoning classifications ordered by the Mayor and Board of Aldermen on April 2, 1985. Hammon complains that Luter has no standing or authority to proceed with this appeal.
An identical legal question has been presented in Luter v. Oakhurst Associates, Ltd., et al., 529 So.2d 889, 892 (Miss. 1988). On the authority of Luter I, we hold that Emmett Luter has standing to prosecute this appeal and that he is a proper party appellant. Miss. Code Ann. § 11-51-105 (Supp. 1987).

IV.
Turning to the merits, our law is well settled that, before municipal authorities have the power to rezone, they must find either
(1) that there was a mistake in the original zoning, or
(2)(a) that the character of the neighborhood has changed substantially so that rezoning is clearly justified and
(b) that there is a public need for the rezoning of the property.
Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987); Board of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 883 (Miss. 1987); Thrash v. Mayor and Commissioners of the City of Jackson, 498 So.2d 801, 805 (Miss. 1986).
Both zoning and rezoning are legislative functions. As such, the judicial department of the government of this state has no authority to interdict either zoning or rezoning decisions which may be said "fairly debatable." Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987); Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 505 (Miss. 1986); Woodlands Conservation Association, Inc. v. City of Jackson, 443 So.2d 1173, 1179-80 (Miss. 1983).
Specifically, the fairly debatable standard applies to the legislative questions whether there has been a change in the character of the neighborhood and whether there is a public need for the rezoning. If these two questions may, on the matters before the Mayor and Board of Aldermen, be said fairly debatable, there is no judicial authority to interfere and the action taken by the city zoning authorities, be it pro or con the proposed rezoning, must be allowed to stand. Saunders v. *629 City of Jackson, 511 So.2d 902, 906-07 (Miss. 1987); Coleman v. Southwood Realty Co., 271 So.2d 742, 743 (Miss. 1973).
What then is the evidence of a change in the neighborhood? Along Beulah Avenue (U.S. Highway 98), which forms a T intersection with Simmons Street and is less than half a block from subject property, a law office has been established, plus a fast food restaurant, an insurance office and a nursery and day care center. On the other hand, there appears to have been no significant residential development in the area in recent years. The record before the Mayor and Board further reflects the general commercialization of downtown business district properties in Tylertown and the continued shrinkage of those properties used for residential purposes.
On the question of public need for rezoning, the Mayor and Board had before them a future land use study prepared by the Department of Economic Development and the Mississippi Research and Development Center in April of 1985. The findings of that study provide a substantial basis for a conclusion that there is a public need for commercially zoned properties in downtown Tylertown.
In the end, this is another of the many cases where in recent years we have recognized the duty of municipal zoning authorities, acting legislatively, to "look out the window" and act on the basis of what they see happening in their community. Thrash v. Mayor and Commissioners of City of Jackson, 498 So.2d 801, 805 (Miss. 1986). Justice Hawkins well put the point in Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323 (Miss. 1982) when, speaking for the Court, he wrote:
In rendering the municipal order, the Mayor and Board of Aldermen were authorized to consider the statements expressed by all the landowners at the hearing, as well as to call upon their own common knowledge and experience in their town. It is manifest that the Mayor and Board took into consideration all statements, both sworn and unsworn, and their common knowledge and familiarity about their small municipality, in reaching their decision. We believe this method to be sound and practical, and courts should respect such findings unless they are arbitrary, capricious and unreasonable.
423 So.2d at 1327-28; see also Broadacres, Inc. v. City of Hattiesburg, et al., 489 So.2d 501, 504-05 (Miss. 1986); City of Jackson v. Aldridge, 487 So.2d 1345, 1347 (Miss. 1986); Northwest Builders, Inc. v. Moore, 475 So.2d 153, 155 (Miss. 1985); and Woodland Hills Conservation Association, Inc. v. City of Jackson, 443 So.2d 1173, 1181 n. 8 (Miss. 1983). Tylertown's Mayor and Board of Aldermen said quite openly that they "looked out the window".
Having in mind all of the documents and testimony before it and as well the legal criteria for rezoning and the description of the legislative function of the Mayor and Board, we regard the question whether the subject property should be rezoned from classification R-2 to classification C-4 as fairly debatable. Conversely, it may not be said that this rezoning decision was arbitrary, capricious and wholly unreasonable. The judgment of the Circuit Court must be reversed, subject to one possible additional fly in the ointment to be discussed below.

V.
Hammon has filed no cross-appeal. She nevertheless argues an alternative basis for affirming the judgment of the Circuit Court. Specifically, Hammon points to the fact that the public notice issued prior to the April 2, 1985, meeting of the Mayor and Board of Aldermen indicated that Hosea Luter's R-2 property was proposed for rezoning to C-1 (neighborhood commercial). In fact, at the conclusion of the hearing, the Mayor and Board rezoned this property as C-4 (general commercial). Hammon argues that no public notice was given that the subject lands were being considered for C-4 zoning and, accordingly, that the C-4 zoning classification ordered by the Mayor and Board should be vacated.
*630 Reasonable advance notice and the opportunity to be heard are hallmarks of our zoning statutes in this state and of our zoning ordinances in every community in this state. See Miss. Code Ann. § 17-1-17 (Supp. 1987). There can be no question but that Hammon was apprised well in advance of the proposal to rezone Luter's property from R-2 residential to a commercial classification. Hammon offers no basis upon which one might believe that she would be more content or better off if the adjoining property were zoned C-1 instead of C-4. Hammon's objection was to commercial zoning, period, and she has presented us nothing to suggest she has any preference for one commercial classification over another. She objected altogether to a commercial zoning of the property. She wants it to stay R-2, period.
As a practical matter it would be unduly restrictive to provide that the Mayor and Board, in the event a rezoning be determined appropriate, were restricted to the precise classification given in the notice. Nothing in our law requires such. This would be the same as saying in an annexation case that the municipality seeking the annexation would have to prove that every square inch of the proposed area was legally proper for annexation. In fact, as a practical matter, courts certainly have the authority to authorize annexation of less than all of the proposed territory. See In Re Extension of Boundaries of City of Biloxi, 361 So.2d 1372, 1374-75 (Miss. 1978). Somewhat analogously, we hold that at a rezoning hearing the Mayor and Board may order rezoning to any classification within the same general category of that proposed in the rezoning notice. Only where it may be said that the objectors are genuinely surprised to the point that they have not been afforded a reasonable opportunity to marshall their evidence and witnesses in opposition to a proposed rezoning may the authority of the mayor and board be limited. Suffice it to say that Hammon makes no such claim of surprise.
We hold that, having found a change in the characteristics of the neighborhood and a public need for commercial rezoning were present, the Mayor and Board had authority to rezone the Luter property C-4, notwithstanding that the published notice contemplated a proposed rezoning to C-1.
REVERSED AND RENDERED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.