CARLSON, Justice,
Dissenting.
¶ 56. Because the Mayor and Board of Aldermen of the City of Clinton (the City) had the authority to enforce what was a constitutionally valid ordinance, I respectfully dissent.
¶ 57. The standard for reviewing zoning eases is certain. This Court must determine whether the board acted in an arbitrary and capricious manner and whether its action was supported by substantial evidence. See Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 503 (Miss.1986). This Court has also held that the circuit court acts as an appellate court in reviewing zoning cases and not as the trier of fact. See Board of Aldermen v. Conerly, 509 So.2d 877, 885 (Miss.1987). A governing body’s zoning ordinance is presumptively valid; thus, the burden of proof is on the party asserting its invalidity. Where the point at issue is “fairly debatable,” this Court will not disturb the zoning authority’s action. Petition of Carpenter v. City of Petal, 699 So.2d 928, 932 (Miss.1997). Accordingly, a governing body’s application and enforcement of zoning ordinances will not be set aside unless it is shown to be arbitrary, capricious, discriminatory, illegal or without substantial evi-dentiary basis. Id.
I. Whether the circuit court applied the correct standard of review.
¶ 58. The City argues that the circuit court erred in 1) substituting its own opinion for that of the Mayor and Board of Aldermen, 2) failing to accept the City’s findings and substituting it’s own findings, and 3) ignoring the “fairly debatable” standard. I agree with the City’s contentions.
¶ 59. We are bound to apply the law as written, and this Court thus cannot substitute its own judgment as to the wisdom and the soundness of the municipality’s action. Moore v. Madison County Bd. of Supervisors, 227 So.2d 862 (Miss.1969).
¶ 60. The scope of a reviewing court is limited. The order of the governing body of the municipality will not be set aside if its validity is fairly debatable. Sanderson v. City of Hattiesburg, 249 Miss. 656, 163 So.2d 739, 741 (1964). Such an order will be upheld provided it is not “wholly unreasonable or an abuse of discretion, without any reasonably probable basis in the evi *429 dence.” Id. The burden of proof lays with the opponent of such. Id.
¶ 61. In the instant case, the circuit court recognized the correct standard of review, but, in my opinion, failed to apply it. The circuit court’s written opinion contains no clear analysis defining how the City acted arbitrarily and capriciously in its decision that the tree house is an accessory building. Instead, the circuit court reviewed Sections 200 and 401.05 of the City of Clinton’s zoning ordinances, which define accessory buildings, and substituted its own opinion for that of the City. The court ruled that since the City’s ordinances do not define “tree house” or prohibit the building of a “tree house” anywhere on a landowner’s property, the tree house could not be classified as an accessory building.
¶ 62. Section 201 of Clinton’s zoning ordinance defines a “structure” as follows:
Anything constructed or erected, the use of which requires a fixed location on the ground, or attached to something with a fixed location on the ground. Among other things, structures include buildings, mobile homes, walls, fences, and billboards, but shall not include “Transient Trailers (Travel Trailers)” as defined herein. The term structure shall be construed as if followed by the words “or part thereof.”
Section 201 further defines and “accessory structure or use” as follows:
Any detached structure or use which is subordinate or incidental to the main building or dominant use of the lot or premises, excluding driveways, sidewalks, and fences.
Section 401.05 of Clinton’s current zoning ordinance reads as follows:
Accessory Buildings or Uses: Accessory buildings or uses are PROHIBITED in the front yard and side yard of ANY district.
¶ 63. The City concluded that although the zoning ordinance did not specifically prohibit “tree houses,” the particular tree house in question was built in such an elaborate way that it was to be considered an accessory building. In my opinion, when the circuit court found that the tree house could not be classified as an accessory building, it substituted its own opinion and findings for that of the City.
¶ 64. Whether the tree house is an accessory structure is a fairly debatable question. The City argues that the circuit court erred in ignoring the “fairly debatable standard” when it decided to overrule the City’s findings. “Fairly debatable” is the antithesis of arbitrary and capricious. Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss.1987). If matters before the Mayor and Board of Aldermen can be deemed fairly debatable, then there is no judicial authority to interfere and the action taken by the zoning authorities must be upheld. Fondren North Renaissance v. Mayor & City Council of Jackson, 749 So.2d 974, 977 (Miss.1999).
¶ 65. The record before us supports the City’s argument. The Zoning Commission and the Mayor and Board of Aldermen were presented with arguments by both sides. After it became apparent that an unpopular application of the ordinance was to be the outcome, the board members commented on how difficult their decision was and noted the intense effort to reach a compromise. Based on this, it cannot be said that the City’s decision was either arbitrary or capricious.
¶ 66. Though not critical to a determination of whether the decision was fairly debatable, I note that during the hearings held on July 23, 2002 and August 6, 2002, the Welches were allowed to present lengthy arguments to the governing body. Thus, the fact that it was debated at length further supports a finding that the *430 decision was fairly debatable. No limitation was placed on the Welches and their counsel. Generally, a governing body’s decision is not arbitrary, capricious, unreasonable 'or illegal in circumstances where each side receives a full and complete hearing and is afforded due process. Barnes v. Board of Supervisors, DeSoto County, 553 So.2d 508, 512 (Miss.1989).
¶ 67. Because the circuit court failed tó adhere to the proper standard of review, and since the decision by the City was fairly debatable, I would reverse the circuit court’s decision and reinstate the City’s ruling. Though I would find this issue to be dispositive, I address the other issues raised.
II. Whether the circuit court erred in finding that the Welches were entitled to a special exceptiori/condi-tional use or to a non-conforming use designation.
¶ 68. The circuit court determined' the Welches were entitled to either a special exception/conditional use or a non-conforming use. Relying on the zoning ordinance, the City argues that this is an error.
A. Conditional Use/Special Exception
¶ 69. “Conditional Use” is defined under § 200 of Clinton’s zoning ordinance as follows:
A land use, which would not generally be appropriate in particular zoning district, but which, with certain restrictions or conditions, would in the judgement of the Mayor and Board of Aldermen, promote the public health, safety, morals, or general welfare of the City and would not adversely affect adjacent property. A permit granted by the Mayor and Board of Aldermen for the initiation of a conditional use (with necessary restrictions included) will not change the zoning of the property involved and will allow such a use to. continue as long as the specific use granted by the conditional use remains the same. Also referred to as a special exception.
¶ 70. The City contends that the current zoning ordinance limits the granting of a conditional use in R-T Residential District and that the tree house is not a permitted use or structure as set out in the ordinance. Section 602 provides:
SECTION 602 — CONDITIONAL USES AND STRUCTURES AS PROVIDED IN SECTION 2405
(a) Public or quasi-public facilities and utilities in conformance with Section 402 and other regulations of this Ordinance.
(b) Child care facilities.
(c) Inns or “bed and breakfast inns.”
¶ 71. The circuit court did not acknowledge that these were the only types of structures permitted as a conditional use in an R-l Residential District. The Welches’ structure does not fit any of these allowable special conditions in an R-1 District. The City contends that it had no choice but to reject the request for the conditional use/special exception and that the circuit court erred in ignoring this portion of the ordinance. The City is correct. The decision to deny the conditional use was neither arbitrary nor capricious. Instead, it simply enforced the zoning ordinance.
¶ 72. Instead of addressing Section 602, the circuit court took note of Section 2405.01 of the City’s ordinance, which sets forth the requirements or factors to be considered in granting a special or conditional use request. Those factors, in pertinent part, are also found in Barnes v. Board of Supervisors, DeSoto County, 553 So.2d at 509-10:
*431 1) Does the conditional use increase traffic hazards or congestion?
2) Does the conditional use increase any fire hazards?
3) Does the conditional use adversely affect the character of the neighborhood?
4) Does the conditional use substantially adversely affect the general welfare of the community?
¶ 73. The burden is on the applicants to show by a preponderance of the evidence that they have met the essential elements/factors essential to obtaining the conditional use permit. Id. at 510-11. The circuit court held that there was no evidence in the record that the City considered § 2405.01 or Barnes. This is plain error since the burden is on the Welches to demonstrate that the tree house complied with each element. There is no indication that the Welches did so. Additionally, according to § 2405.02 of the zoning ordinance, every applicant for a conditional use permit shall submit a site plan. No such plan was submitted in the case sub judice.
¶ 74. The Welches assert that there is not “one scintilla” of evidence in the record which revealed that the tree house would have adversely affected any of the property owners. Rather, the Welches offered testimony from Scot Welch at the Board meeting that three of the last five houses sold in the Welches’ neighborhood sold in five days or less, with the other two residences being sold within four months of being placed on the market for sale. However, the circuit court and the Welches fail to acknowledge that the initial complaint pertaining to the tree house originated from the neighbor across the street. An e-mail from the neighbor to the Mayor is contained in the record. The e-mail stated that several prospective buyers of the neighbor’s house made specific comments that the tree house made the property less desirable and detracted from the value. Thus, in my opinion, this evidence in opposition of the tree house is more than a “mere scintilla,” and it supports the City’s denial of the conditional use permit. City of Olive Branch Bd. of Aldermen v. Bunker, 733 So.2d 842, 846 (Miss.Ct.App.1998). Therefore, I would find that the circuit court erred in reversing the City’s decision to deny a conditional use permit.
B. Non-Conforming Use
¶ 75. The circuit court held that the record in the case sub judice contained substantial evidence to justify the approval of a non-conforming use permit.
¶ 76. A “non-conforming use” is defined in Clinton’s current zoning ordinance under § 2200 as:
Any land, lot, building, structure, or parts thereof existing prior to the enactment of this ordinance, which subsequent to the enactment of this ordinance or amendment thereto, does not conform with the use regulations and/or dimensional regulations of the district in which it is situated, and/or does not comply with any other requirements herein.
¶ 77. Additionally, § 2200 states that in order to be permitted as a non-conformity, a structure must have been lawful under the prior zoning ordinance and it may not be enlarged upon, expanded or extended. The Welches argue that the tree house was legal under the 1976 zoning ordinance because the construction of the tree house allegedly began in March 1997. The City of Clinton’s current zoning ordinance was then amended in April of 1997. Therefore, the circuit court ruled there was sufficient evidence for the City to grant a non-conforming use permit based on the Welches’ testimony that the tree house was begun in March of 1997. However, the circuit court failed to acknowledge that even if *432 the tree house was legally constructed, it could not be enlarged upon or expanded. According to the record, it is clear that the tree house began as a platform, which is not a structure in violation of the zoning ordinance. It was then enlarged substantially from April 1997 to 2000. I firmly believe that based on the violation of the prerequisites for a non-conforming use permit, the City properly denied the request.
III. Whether the circuit court incorrectly applied the doctrine of equitable estoppel against the City.
¶ 78. This Court has previously held that the doctrine of equitable estoppel may be applied against the state and its municipalities. Suggs v. Town of Caledonia, 470 So.2d 1055, 1057 (Miss.1985). The following factual elements are a prerequisite to the application of the doctrine: (1) belief and reliance on some representation; (2) change of position, as a result thereof; and (3) detriment or prejudice as a result of the change of position. Id. This Court has long held that the application of the doctrine of equitable estoppel against a municipality is unique. Because a municipality may only act through its minutes, ordinarily the unauthorized acts of one of its officials does not estop a municipality from acting in its governmental capacity. Id. (citing Lancaster v. City of Columbus, 333 F.Supp. 1012 (N.D.Miss.1971); Reliance Mfg. Co. v. Barr, 245 Miss. 86, 146 So.2d 569 (1962); Colle Towing Co. v. Harrison County, 213 Miss. 442, 57 So.2d 171 (1952); Am. Oil Co. v. Marion County, 187 Miss. 148, 192 So. 296 (1939)).
¶ 79. The circuit court found, contrary to the decision of the City, that the building inspector for the City had granted permission for the Welches to construct the structure in their front yard. Mrs. Welch asserted that she asked the building inspector about the tree house before constructing it, and the building inspector told her that the structure was not in violation of the zoning ordinances. However, there was never a permit issued for the tree house. The inspector is deceased and was not available to contradict the statements of Mrs. Welch. The Welches also argue that on at least two occasions, city building inspectors were on their property and that if the tree house were illegal, they would have raised the issue.
¶ 80. The City argues that the circuit court erred in applying the doctrine of equitable estoppel because there is no mention of granting a permit for the tree house in the City’s minutes. Again, I believe that the City is correct because a municipality can speak only through its minutes. Under the reasoning of the circuit court, any city employee could agree to and bind the City to anything and any alleged observation by any city employee would impute knowledge to the City, thereby binding the City by actions or inactions of its employees. The record reveals that the Mayor and Board of Aldermen had no knowledge of these issues prior to the matter being reported to the Zoning Commission in May 2002.
¶ 81. Moreover, this Court’s opinion in Suggs v. Town of Caledonia, 470 So.2d 1055 (Miss.1985), is directly applicable to the case at bar. In Suggs, two store owners brought an action to enjoin the town from enforcing a municipal ordinance regarding the sale of beer. The store owner claimed that he acted on the representation of the mayor in locating his store where he did. This Court held that the fact that one store owner relied on the mayor’s comments to him regarding the sale of beer did not support the application of the doctrine of estoppel to bar the town from enforcing its ordinance against the store owner. Id. at 1057. This Court held that “the unauthorized act of one of its *433 officials does not estop a municipality from acting in its governmental capacity.” Id. This Court further held that because neither the mayor or board of aldermen of the town were aware that the convenience mart was in violation of a zoning ordinance (being located within 1500 feet of a church), the imposition of the doctrine of equitable estoppel was not appropriate.
¶ 82. In today’s case, the Mayor and Board of Aldermen lacked knowledge of the existence of the tree house, as the Welches were never officially issued a permit and it was never recorded in the City’s minutes. When the matter was brought to the attention of the governing body, the Mayor and Board of Aldermen acted in accordance with the ordinances of the city.
¶ 83. The circuit court relied on Koval v. Koval, 576 So.2d 134 (Miss.1991); PMZ Oil Co. v. Lucroy, 449 So.2d 201 (Miss.1984); Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221 (Miss.2000) and Walker v. City of Biloxi, 229 Miss. 890, 92 So.2d 227, 229 (1957), to support its opinion. However, the circuit court’s reliance on these cases is misplaced. . Equitable estop-pel does not apply to municipalities unless there has been official action by the governing body. The Court in Koval applied the doctrine of equitable estoppel to enforce an oral contract between a son and his parents to convey land. The Court in PMZ Oil Co. applied the doctrine of equitable estoppel against a developer holding that the developer could not construct town homes because it was a violation of a unrecorded covenant allowing only single family dwellings to be built on the lots. Koval and PMZ Oil Co. do not deal with equitable estoppel as applied to a municipality and are clearly not applicable to the ease at bar.
¶ 84. Town of Florence and Walker do involve the application of the doctrine of equitable estoppel as pertaining to municipalities. In Town of Florence, Sea Lands bought a 6.5 acre tract of land that was originally zoned for R-2. Sea Lands planned to build a multi-family dwelling on the property. The Planning and Zoning Commission then held a hearing to re-zone the property back to R-l. Sea Lands objected to the re-zoning because it had not been notified of the hearing. This Court applied the doctrine of equitable estoppel against the Town finding that there was reliance on the R-2 zoning which had been in effect for approximately nine years pri- or to Sea Lands’ purchase of the property.
¶ 85. Walker v. City of Biloxi is factually distinguishable from the case at bar. In Walker, the owner of a commercial building was charged with operating a business in a' residentially zoned neighborhood in violation of the' city ordinance. The business owner argued that the city ordinance was void because the municipal authorities did not comply with the procedures in adopting zoning laws. This Court upheld the ordinance in favor of the City and applied the doctrine of equitable estoppel against the individual. This Court held that because houses were being constructed under this ordinance and the general public had recognized the ordinance and acted pursuant to the ordinance, the ordinance was upheld in favor of the City.
¶ 86. These cases are distinguishable from the case at bar in that each party relied on a zoning ordinance, which is an official action of the city and the planning and zoning commission. In the present case, the Welches are claiming they relied on an individual, who clearly cannot speak on behalf of the city. As previously stated, a city can only act through its minutes and official acts. Here, there was no record of a permit for the tree house recorded with the city, and there was no record on the City’s official minutes did not reveal that the City had notice of the tree house’s *434 presence in the Welches’ front yard. Therefore, I conclude that the circuit court incorrectly applied the doctrine of equitable estoppel against the City.
IV. Whether the “no recommendation” vote by Clinton’s Zoning and Planning Commission violates Clinton’s zoning ordinances and is an arbitrary, capricious and unreasonable act.
■ ¶ 87. Section 2411.03 of the City’s -current zoning ordinance entitled “Public Hearings Before the Planning Commission” states in pertinent part that only in case of a tie vote may an application, be forwarded to the Mayor and Board of Aldermen -“without recommendation.” At the Zoning and Planning Commission, a vote was made to pass this issue to. the Mayor and Board of Aldermen “without recommendation” because the Commission felt that there was insufficient time to thoroughly examine all of the material since the Welches presented the Commission with their application only minutes before the meeting began.
¶ 88. The City argues that the “no recommendation” vote did not harm the outcome of the Welches’ case and that the Mayor and Board of Aldermen had all of the information which was presented to the Planning and Zoning Commission, the 75 page transcript from the public hearing, plus the necessary time to review it. The City further asserts that the Commission’s recommendation is only advisory in nature and nothing in the zoning ordinance or statutes binds the City based on the recommendations of the Commission. Furthermore, the City contends that the Board has the final authority concerning zoning matters.
¶ 89. The Welches contend that the “no recommendation” vote by the Commission was arbitrary and capricious, and they assert that because of this vote, their procedural and substantive due process and equal protection rights under the Fifth and Fourteenth Amendments of the United States Constitution and Art. 3, §§ 14 and 17 of the Mississippi Constitution have been violated. The Welches maintain that they were not treated like all other applicants similarly situated under Clinton’s zoning ordinance procedures and substantive requirements. However, I would find that this argument is without merit.
¶ 90. The Welches offer no evidence demonstrating that their equal protection rights were violated. To the contrary, it is the contention of the City that a “no recommendation” vote has been utilized in other similar circumstances, as illustrated in the City’s minutes. As stated in Thrash v. Mayor and Comm’rs of City of Jackson, 498 So.2d 801 (Miss.1986), “[I]t is the City which is vested with final authority for determining whether its procedural requisites have been met or, if it pleases, waiving them.” Id. at 807 (emphasis added). As to the due process argument, this Court in Thrash went on to hold:
[W]e consider it beyond debate that the essence of the due process right, if any, guaranteed to Thrash and the other Objectors is reasonable advance notice of the substance of the re-zoning proposal together with the opportunity to be heard at all critical stages of the process. The record abundantly reflects that the objectors in fact had ample advance notice. They appeared before the Zoning Hearing Committee ... personally and through counsel, and were give full opportunity to present any and all matters they wished.
Id. at 808. Today’s case is no different from the due process issue addressed in Thrash. The Welches were given ample notice of the hearing and were given the opportunity to be heard at all critical *435 stages during the hearing, both personally and through counsel. Therefore, the “no recommendation” vote did not in any way harm the outcome of the Welches’ case, and their procedural and substantive due process rights were not violated.
¶ 91. For these reasons, I am convinced that the circuit court erred in reversing the City’s decision. The evidence in the record supports the Board’s decision to classify the tree house as an accessory building and to deny a conditional use variance was neither arbitrary and capricious nor was it unsupported by substantial evidence, having been fairly debated in a public forum. I fervently believe that this Court should reverse the circuit court’s judgment and reinstate the City’s decision finding the tree house in violation of the zoning ordinance. Because the majority holds otherwise, I respectfully dissent.
WALLER, P.J., JOINS THIS OPINION.