529 So.2d 889 (1988)
Emmett LUTER, et al.
v.
OAKHURST ASSOCIATES, LTD., a Mississippi Limited Partnership Consisting of Ronald G. Dunston, General Partner, Breed O. Mounger, Jr., a Limited Partner; and Breed O. Mounger, Jr., Individually.
No. 57345.
Supreme Court of Mississippi.
July 13, 1988.
Stephen W. Rimmer, Stephen E. Gardner, Young, Scanlon & Sessums, Jackson, for appellant.
*890 Boyce Holleman, Elizabeth A. Broome, Boyce Holleman, P.A., Gulfport, Keith Starrett, Starrett & Honea, Magnolia, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This is a zoning case with an odd twist. If a purported initial zoning of subject property in 1969 be legally effective, rezoning in 1985 would be permissible only under our familiar change or mistake rule. Objectors, however, argue that the 1969 zoning was invalid and that the 1985 proceeding was one for zoning ab initio.
The Mayor and Board of Aldermen in 1985 held void the actions of their predecessors in 1969 and proceeded to zone ab initio. The Circuit Court reversed. For the reasons articulated below, we now affirm.

II.

A.
At issue today is the zoning classification for two parcels of property on the far west side of Tylertown, Mississippi, near the county hospital. The first and by far the largest consists of 3.23 acres[1] and is owned by Oakhurst Associates, Ltd., one of the Appellees here. Oakhurst is a Mississippi limited partnership consisting of Ronald G. Dunston, general partner, and Breed O. Mounger, Jr., limited partner. The second parcel, a 150 foot strip,[2] is owned by Mounger, individually.
Together Oakhurst and Mounger propose that these parcels be utilized in the development of a 32-unit apartment complex. They represent that they have already expended some $100,000.00 in preliminary and planning costs, allegedly in reliance on the property's heretofore existing R-4 (multi-family residential) zoning classification. Their plans in 1984 contemplated that the 32 units could be constructed for approximately $940,000.00 or about $30.00 per square foot or $30,000.00 per unit.
The property at issue  and the land uses to which surrounding properties are being put  are well described in the Findings of Fact of the Mayor and Board of Aldermen of the Town of Tylertown, Mississippi, made April 2, 1985, to wit:
The subject property is presently undeveloped, in the sense that nothing is built thereon. It is an area that was leveled and graded many years ago and is bordered on the immediate North and Northeast by a wooded area. Farther North, but still in close proximity to the subject property, is the Whispering Pines Subdivision, a fine subdivision consisting entirely of single family residences and developed after 1969. The Whispering Pines Subdivision was annexed by the town in approximately 1982.[[3]] To the East of the subject property lie medical clinic buildings, Walthall County General *891 Hospital, a nursing home, four duplex apartments, a law office, and an area of nice single family residences, all recently constructed. To the South and Southeast lie undeveloped lots, temporary medical clinic buildings, and a drug store, and further South and Southeast along the North margin of Highway 98 are found one older single family residence, some undeveloped lots, a convenience store and a motel. To the West lies four duplex apartment buildings and the Western corporate limits of the town. In what might be considered the same city block as the subject property, the only development is the last mentioned duplexes. In summary, all the property in the corporate limits surrounding the subject property has been developed in character in the past fifteen to eighteen years and in a variety of ways. All the property to the North is exclusively devoted to single family residential purposes. The property immediately East is devoted to-professional services, health care, limited family, multi-family dwellings and, farther East to single family residential use. To the South and Southeast, the most substantial application is for commercial purposes. To the West lie the other duplexes and the other corporate limits. Thus, the subject property might be said to lie at the hub of an area of mixed and varied uses.

B.
The Mayor and Board of Aldermen of Tylertown, Mississippi, adopted a comprehensive zoning ordinance in 1966. At that time the property at issue today was not within the Tylertown corporate limits. In September of 1968, however, Tylertown annexed substantial adjacent and contiguous territory which included the property at issue today. That annexation was confirmed by decree of the Chancery Court of Walthall County, Mississippi, on November 28, 1968.
The Town of Tylertown, it should be added, had failed to include in its comprehensive zoning ordinance a provision for the automatic zoning of newly annexed properties. Because of this the property here in dispute was legally unzoned at the time of annexation in 1968.
At its regular meeting held Tuesday, August 5, 1969, the Mayor and Board of Aldermen determined to publish notice of their intent to zone the subject property so that the larger parcel described above, the 3.23 acre parcel, would be zoned R-4 (multi-family residential) and that the smaller 150 foot strip would be zoned C-1 (neighborhood commercial). A public hearing was scheduled for the hearing of objections at 7:00 p.m. on Tuesday, September 16, 1969. Notice of the hearing was posted publicly according to law and was then published three times in The Tylertown Times.
Following the hearing, the Mayor and Board of Aldermen unanimously adopted the following
RESOLUTION
BE IT RESOLVED by the Mayor and Board of Aldermen of Tylertown that on the advise and recommendation of the Tylertown Planning Commission the unzoned property in and around the Walthall County Hospital north of Highway No. 98 is zoned as follows, to-wit:
All property South of Hospital Drive is hereby zoned Highway Commercial. This contemplates all property South of Hospital Drive, including property to the West of Hospital Drive and South of a line extending from the South margin of Hospital Drive to the Western boundary of the city limits. The property beginning on the Southwest corner of Hospital Drive and running in a straight line from the Southern boundary of said Hospital Drive 150 feet in a Northwestwardly direction, thence parallel to West Hospital Drive to the North edge of the city limits shall be zoned C-1 Commercial.
The remaining property unzoned shall be zoned R-4. Nothing herein shall be retroactive to affect any building presently constructed or under construction.
At this time the Whispering Pines Subdivision  home of most of today's objector appellants, was not a part of the town. In *892 June of 1979, however, the Whispering Pines Subdivision was a part of a larger tract which was annexed to Tylertown.

C.
Procedurally, this case has its genesis at the April 2, 1985, regular meeting of the Mayor and Board of Aldermen of the Town of Tylertown. On that occasion the Mayor and Board held that the 1969 Zoning "Resolution" was void and ineffective to confer any zoning classification upon the subject property.[4] The Mayor and Board then proceeded to hear evidence from a variety of interested parties and at the conclusion of the meeting, and proceeding on the assumption that the property was unzoned property being given its initial zoning, placed it in classification R-2 (single-family residential).
Oakhurst and Mounger timely filed in the Circuit Court of Walthall County a bill of exceptions. After a full hearing and briefing, the Circuit Court held that the 1985 proceedings before the Mayor and Board, properly construed, were rezoning proceedings, not proceedings for zoning ab initio. The Court then held that the rezoning proponents had "failed to meet the necessary burden of proof to rezone" and declared that the 1969 zoning classifications remained in effect, to-wit: for the 3.23-acre tract a zoning of R-4 and for the 150 foot strip a zoning classification of C-1.
This appeal has followed.

III.
Before addressing the merits, a preliminary procedural matter need be met, one raised by Oakhurst's and Mounger's Motion to Dismiss Appeal.
Before the Circuit Court the party seeking to defend the R-2 (re)zoning classification was the Town of Tylertown. The matter being decided adversely to it, the Town has decided not to appeal. Emmett Luter and a group of residential property owners, most of whom reside in Whispering Pines Subdivision, have determined to take up the mantle. The question becomes whether Luter and his group have standing to enter the scene and prosecute the appeal to this Court.
We have little problem with the standing question properly so called. One objector, Harold Beckner, owns a lot approximately 211 feet from subject property at its nearest point. The Whispering Pines Subdivision begins some 530 feet north of the property in dispute. These objector appellants have standing to be heard and press their objections, as the value of their property may be affected by the zoning of subject property. See Barrett v. Ballard, 483 So.2d 304, 305 (Miss. 1985); Northwest Builders, Inc. v. Moore, 475 So.2d 153, 154 (Miss. 1985); Rosenbaum v. City of Meridian, 246 So.2d 539, 541 (Miss. 1971); cf. Belhaven Improvement Association, Inc. v. City of Jackson, 507 So.2d 41, 45-47 (Miss. 1987).
The procedural standing question is answered by Miss. Code Ann. § 11-51-105 (Supp. 1987). In cases such as this citizen groups such as Luter and his associates
shall have the right at his or their own expense to employ private counsel to ... prosecute an appeal to the Supreme Court... .
City of Clinton v. Smith, 493 So.2d 331, 336-37 (Miss. 1986); Cowan v. Gulf City Fisheries, Inc., 344 So.2d 724 (Miss. 1977); see also Cooper v. City of Picayune, 511 So.2d 922 (Miss. 1987).
For these reasons, the motion filed by Oakhurst and Mounger to dismiss the appeal, for award of costs and reasonable *893 attorneys fees, is wholly without merit and is denied.

IV.

A.
The outcome determinative question is whether the 1969 action of the Mayor and Board of Aldermen was legally effective to confer valid zoning classifications upon the subject property  R-4 upon the larger 3.23-acre tract and C-1 on the 150 foot strip.
The Mayor and Board in its action of May 2, 1985, found the 1969 zoning ineffective.[5] In so doing the Board made the following statement:
We are confident of the good faith effort and good intent of the former governing authorities who, in 1969, sat where we sit now. Obviously, they intended to be appropriately and lawfully considering the zoning in this then newly annexed area in a manner they believed would best promote the public welfare and our town. They issued and published a public notice and they obviously intended to zone the property in this area in response to the needs determined by them to exist at that time. They assigned zoning designations from the zoning ordinance to the various portions of the area then under consideration, so they obviously had the 1966 Zoning Ordinance in mind and in hand. They called their act a "resolution" rather than an "ordinance", but we do not believe that to be fatal to the efficacy of their action. However, there is no indication that the document was read aloud at a public meeting or enacted after a roll call vote, both of which we perceive to be essential to the validity of an ordinance. We believe, therefore, although we recognize that it is not our prerogative to decide, that the town officials then holding office failed to exactly comply with the statutes prescribing procedures for what they were then doing. It appears to us, therefore, that the attempt to zone the property described in the "resolution" was ineffective because the statutory procedure was not followed.
The Circuit Court reversed and rendered on this point, although no discussion of the validity of the 1969 zoning was included in its judgment.

B.
On appeal, Emmett Luter and his associates press a number of points in support of their view that the 1969 zoning was without legal effect. One is a clear red herring and may be dispatched summarily. That the recorded form of the action taken by the Mayor and Board on September 16, 1969, is labeled "resolution" instead of "ordinance" has little if anything to say regarding the import of that action, unless we are prepared to hold that the tail wags the dog. The written document states that
the unzoned property [the subject property] ... is zoned as follows, to-wit: [Emphasis added]
This simple language can only connote action, not a statement of intent.
The point was well put in Parr v. Fulton, 9 Mich. App. 719, 158 N.W.2d 35 (1968):
Nomenclature in the legislative field is in some ways analogous to naming a newborn child. In both areas the given name is important, but not determinative of much. A masculine name applied to the 7th daughter in a family will not change that lovely girl into the anticipated first son. Likewise, the fact that the city council of Lansing chose to label its action of May 8th a resolution is of little moment, if in fact, it was improperly designated.
158 N.W.2d at page 37. [Emphasis added]
As stated both by authorities and in case law on the subject, the Court must look to the substance and meaning of the regulation:
Conversely, where a resolution is in substance and effect an ordinance or permanent regulation, the name given to it is immaterial. If it is passed with all the formalities of an ordinance it thereby becomes a legislative act, and it is not *894 important whether it be called ordinance or resolution. (Emphasis added)
5 McQuillin, Municipal Corporations § 15.02 at p. 38 (3d ed. 1965). To like effect is Paine v. Underwood, 203 So.2d 593, 598 (Miss. 1967).
It is enough that in their 1985 action the then Mayor and Board noted the discrepancy in titles but concluded "We do not believe that to be fatal to the efficacy of their action."

C.
Somewhat more significantly, we consider the point that there were procedural irregularities in the adoption of the 1969 zoning classifications. To be sure, a substantial failure to conform to the law's formalities may render quite unenforceable the creative act of one otherwise empowered to make law, and this is true in the area of public law facilities as well as private. As a man's will is invalid and ineffective if he fails to conform to the formalities of the statute, so a municipal ordinance is invalid if it has not been enacted according to procedural prerequisites. See Gatlin v. City of Laurel, 312 So.2d 435 (Miss. 1975).
Yet there is a difference. The official action of the governing authorities of a municipal corporation in this state are presumed valid, albeit rebuttably so. See Bugg v. Town of Houlka, 122 Miss. 400, 404-05, 84 So. 387 (1920); cf. City of Corinth v. Sharp, 107 Miss. 696, 705-08, 65 So. 888, 889-90 (1914). What this means  and the point is critical in this case  is that those who would challenge the formal regularity of the prior act of a municipal corporation bear the burden of demonstrating affirmatively wherein the failures occurred. See City of Biloxi v. Cawley, 278 So.2d 389, 390 (Miss. 1973); City of Greenwood v. Jones, 91 Miss. 728, 46 So. 161, 163 (1908). No doubt as a practical matter proof of a negative may be difficult, particularly where a number of years have elapsed. Yet we regard the presumption vital in that otherwise untold scores of official actions may be invalidated, not because the board or agency failed of compliance, but because the draftsman of the minutes failed to use the requisite magic words. See Paine v. Underwood, 203 So.2d 593, 597 (Miss. 1967).
The Mayor and Board in 1985 held that their 1969 predecessors failed in at least two particulars.
There is no indication that the document was read aloud at a public meeting or enacted after a roll call vote.
Nor is there evidence that these actions were not taken, assuming arguendo that they be required. Before any court will consider invalidation of the action of a municipal board for failure to comply with such formalities, the opponents must demonstrate affirmatively that the formalities were not met. Put otherwise, there is a rebuttable presumption that all formalities incident to such action were complied with, and we will certainly not presume to the contrary merely because the resolution of the Mayor and Board did not recite the literal dotting of each "i" and crossing of each "t". See Paine v. Underwood, 203 So.2d 593, 597 (Miss. 1967). We hold the same with regard to the additional challenges offered by the Luter group, to-wit: that the purported ordinance had never been reduced to writing prior to its being considered for adoption and that there is no evidence that the purported ordinance was ever published in any newspaper having general circulation in the City of Tylertown. We have already dealt with the question of the title of the ordinance.
Putting the point more positively, the record before us reflects the minutes of the Mayor and Board of Aldermen of August 5, 1969, wherein the Mayor and Board announced their intent to zone the newly annexed properties in order that public notice be given of a hearing to be held at the Town Hall on Tuesday, September 16, 1969, at 7:00 p.m.
to hear objections, suggestions or opinions regarding the proposed zoning of the unzoned property... .
This notice conformed to Miss. Code Ann. § 17-1-17 (1972) as it then existed. The minutes expressly state that the 150 foot *895 strip is to be zoned C-1 commercial and that the remaining property is to be zoned R-4. The record further affirmatively reflects that the public notice was duly posted and there appears an affidavit of proof of publication of such notice in The Tylertown Times on August 28, 1969, September 4, 1969, and September 11, 1969. Finally, the ordinance nee resolution appears. This is enough to raise a presumption of regularity shifting to the opponents the burden of affirmative demonstration wherein the 1969 action failed of compliance with essential formalities.
The record wholly fails to reflect that the Luter group or anyone else produced any testimony or other evidence that there was a failure of compliance with the requisite formalities incident to the adoption of the 1969 zoning ordinance. Therefore, on this record, we hold that, effective September 16, 1969, the larger 3.23-acre tract was validly zoned R-4 (multi-family residential) and the 150 foot strip was validly zoned C-1 (neighborhood commercial).

D.
In light of this conclusion, it becomes important to recall just what was done by the Mayor and Board of Aldermen on April 2, 1985. The Mayor and Board on that occasion did not apply to the facts before them the familiar "change or mistake" rezoning criteria. See, e.g., Board of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 883 (Miss. 1987); Woodland Hills Conservation Association, Inc. v. City of Jackson, 443 So.2d 1173, 1182 (Miss. 1983). Rather, the Mayor and Board proceeded on the assumption that the property was unzoned and that they were adopting the initial zoning classification for the property.
Assuming arguendo, that this were indeed a zoning ab initio, we would have to concede that the R-2 zoning classification was one protected from judicial review by the fairly debatable rule. See Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987); Thrash v. Mayor and Commissioners of City of Jackson, 498 So.2d 801, 805-06 (Miss. 1986). This avails Appellants Luter, et al. nothing, for the April 1985 proceedings were in law ones for rezoning, not zoning ab initio. Appellants concede, as they must, that the fairly debatable/zoning ab initio test involves "a significantly lower standard of proof" than change or mistake rezoning. Reply Brief of Appellants, at p. 9, filed October 6, 1986.
It matters not, hypothetically, had the Mayor and Board in 1985 considered that they had before them a rezoning application and, had they in fact made the necessary change or mistake findings, that on this evidence such findings may well have been within their authority. The cold reality is that the Mayor and Board simply applied the wrong legal criteria to the factual matters before it. We will not indulge in idle speculation what their decision would have been had they had before them the correct  and quite different  change or mistake rezoning criteria.

V.
Beyond these points, Appellants Luter, et al. complain that the City of Tylertown never kept an official zoning map. They rely upon the City of Tylertown Zoning Ordinance § 301 which provides
The official zoning map shall carry the signature of the Mayor and City Clerk certifying that it is the true map adopted by the Board. All amendments shall be identified on the map and similarly certified.
Whatever remedies may be available to a citizen aggrieved by the failure of the City to maintain an official zoning map, whatever sanctions or penalties may be imposed upon those violating this duty, we may say with confidence that voiding absolutely an otherwise valid zoning is not among those.
Appellants Luter, et al., cite Ballard v. Smith, 234 Miss. 531, 107 So.2d 580 (1958). The rationale offered there would afford relief only where one had in fact been using his property in violation of its zoning classification, which the property owner could not ascertain for lack of an official map. Suffice it to say that today's Appellant objectors are quite outside that rationale.
*896 Only a moment's thought makes clear that Appellants' point proves way too much. If the failure of Tylertown authorities to maintain a zoning map invalidates the 1969 zoning on subject property, it surely follows that the zoning classification for the remainder of the entire town of Tylertown is similarly invalid. To so hold would be foolish.

VI.
As indicated at the outset, the Circuit Court reversed the action of the Mayor and Board and reinstated the R-4 and C-1 zoning classifications. By reason of what has been said above, we have no authority but to affirm.
AFFIRMED; MOTION TO DISMISS APPEAL, FOR AWARD OF COSTS AND REASONABLE ATTORNEY FEES DENIED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] This larger parcel is described more particularly as follows:

Commence at the southwest corner of the Southwest Quarter of the Southwest Quarter of Section 24, Township 2 North, Range 10 East, Walthall County, Mississippi, and run North 1431.0 feet to the point of beginning; run thence East 150.0 feet; run thence South 69.9 feet; run thence South 58 degrees, 57 minutes East 116.7 feet; run thence North 31 degrees, 03 minutes East 411.8 feet; run thence North 58 degrees, 57 minutes West 188.8 feet; thence run West 300.6 feet to the West line of the Northwest Quarter of Section 24, Township 2 North, Range 10 East; run thence South 320.0 feet to the point of beginning, containing 3.23 acres. All in the West half of the Southwest Quarter of Section 24, Township 2 North, Range 10 East, Walthall County, Mississippi.
[2] A full description of this second parcel is as follows:

A 150 foot parcel of land lying North and West, and running parallel to Deborah Drive (formerly Medical Drive) and lying between an extension of the North Margin of Hospital Drive in the Southwest Quarter of Southwest Quarter of Section 24, Township 2 North, Range 10 East and the North line of the South Quarter of the Northwest Quarter of Southwest Quarter of Section 24, Township 2 North, Range 10 East (which line was formerly a North boundary of the Town of Tylertown).
[3] In fact, Whispering Pines Subdivision was annexed to the Town of Tylertown in 1979.
[4] At points the Board seems to have equivocated, viz. "... we recognize that it is not our prerogative to decide that the town officials then holding office failed to exactly comply with the statutes prescribing procedures for what they were then doing." And, "while the 1965 [sic] resolution was probably ineffective to legally zone the subject property as R-4... ." In the end, the Mayor and Board held: "It appears to us, therefore, that the attempt to zone the property described in the resolution was ineffective... ." The record reflects that city attorney Joseph M. Stinson furnished his opinion that the 1969 zoning was invalid. Appellants Luter, et al., have certainly placed all their eggs in that basket. See Brief of Appellant, pp. 13-21, filed August 4, 1986.
[5] See footnote 4, supra.