# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01194-SCT

*TOWN OF FLORENCE, MISSISSIPPI*

*v.*

*SEA LANDS, LTD.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/1997 |
| TRIAL JUDGE: | HON. ROBERT LOUIS GOZA, JR. |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID RINGER |
| ATTORNEYS FOR APPELLEE: | PAUL B. HENDERSON |
| | C. ALLEN PHILLIPS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 05/18/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/8/2000 |

**BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. In 1977, the Board of Aldermen of the Town of Florence, Mississippi, rezoned a certain tract of land on Old Highway 49 North from R-1, Single Family Residential, to R-2, Multi-Family Residential. In 1986, Sea Lands, Ltd. ("Sea Lands") purchased approximately 1.8 acres of land within that zoning designation located at the intersection of Old Highway 49 and Virginia Street in Florence.

¶2. On recommendation of the Florence governing authorities, the Planning and Zoning Commission began to consider the rezoning, from R-2 back to R-1, of a 6.5 acre tract of land which encompassed the property owned by Sea Lands. No formal petition was filed, and the record does not indicate why the Mayor and Board of Aldermen requested a review of the zoning ordinances. After the Commission held a public hearing on March 14, 1996, it recommended that the Mayor and Board of Aldermen adopt an ordinance rezoning the subject property. The Commission specifically stated that there had been a material change in circumstances in the area and that the constituents in the area wanted the change in zoning.

¶3. After Sea Lands objected to the rezoning because it had not been notified of the hearing, a subsequent hearing was held on May 28, 1996, by the Mayor and Board of Aldermen. At that hearing, Florence did not call any witnesses to testify in favor of the rezoning, but it did produce some documents that were introduced into evidence for consideration by the Mayor and the Board. Those documents included the Commission's report and information regarding the original hearing. Also introduced were an affidavit of the

police chief concerning the traffic and safety concerns and the affidavit of two private citizens in support of the rezoning. Florence also presented a statement by Walter Murphy, who owned the remainder of the land subject to rezoning, which indicated that he was in favor of the rezoning.

¶4. Thirteen private Florence citizens testified in support of the rezoning at the public hearing. These citizens expressed their concerns that the construction of a multi-unit residential complex would significantly add to the traffic congestion. They related that there already existed near the subject property a dangerous intersection where many traffic accidents occurred and that this situation would only be worsened with additional traffic. They were also concerned that the construction of low-income housing would detract from the value, aesthetic and real, of their single-family dwellings. The citizens also opined that besides the increase in traffic, only single-family units have been constructed in the vicinity of the subject property, significantly changing the character of the neighborhood and evidencing a public need for the change in zoning.

¶5. Sea Lands presented testimony and evidence related to its objections to the change in zoning. First, Marc Boteler testified that he was a life-long resident of Florence and a licensed real estate appraiser. He was a member of the Planning Commission in 1994 when that body had prepared a Comprehensive Community Development Plan, which did not recommend any change in the zoning of the subject property. Boteler testified that the land use characteristics had not changed since the property had been zoned R-2. He further stated that there was a great need for more rental units in Florence, but no such need for single-family residences. Boteler testified that rezoning the subject property would decrease its value.

¶6. Second, Jimmy Gouras, a city planning consultant, testified. Gouras made a study of the subject property, and his report was entered into evidence. Gouras had reviewed the Comprehensive Plan, which indicated a need for higher density residential land development, comparable to R-2 zoning. The Plan identified neither a material change in the area proposed for rezoning nor an error in the original zoning, as required by state law. *Id.* He found no substantial change in the character of the neighborhood at issue and that rezoning would lower the property values.

¶7. Sea Lands also introduced the affidavit of W. J. Bryan Baker, the Vice President of Continental Consultants, the firm which prepared the Comprehensive Plan. Baker stated that there had been no material change in the character of the neighborhood and no public need for additional R-1 property and that it would be inappropriate to change the zoning of the subject property.

¶8. On June 4, 1996, the Mayor and Board of Aldermen unanimously adopted an ordinance to rezone the property from R-2 to R-1. Aggrieved by that decision, Sea Lands appealed by bill of exceptions to the Circuit Court of Rankin County, which reversed the Board's decision. The circuit court found that: (1) Florence was equitably estopped from rezoning the property since Sea Lands had relied on the multi-family residential zoning in purchasing its property; and (2) there was no clear and convincing evidence that the character of the neighborhood had substantially changed or that a public need for more R-1 zoning existed.

¶9. Aggrieved by the judgment of the circuit court, Florence appeals to this Court, raising the following issues:

> **I. Whether the circuit court erred when it found that there was no mistake in the 1977 rezoning sufficient to justify the current rezoning.**

**II. Whether the circuit court erred in its finding that the decision to rezone the subject property was arbitrary and capricious because there was not clear and convincing evidence that there was a material change in the character of the neighborhood and a public need for rezoning.**

**III. Whether the circuit court erred when it found that Florence should be equitably estopped from rezoning the subject property.**

## DISCUSSION

¶10. This Court has held that zoning is not a judicial matter, but a legislative matter. ***Luter v. Hammon***, 529 So. 2d 625, 628 (Miss. 1988). On appeal, the decision of the Board must be upheld unless it is "arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." ***Faircloth v. Lyles***, 592 So. 2d 941, 943 (Miss. 1991). Therefore, the decision to rezone will not be disturbed where it is "fairly debatable." ***Saunders v. City of Jackson***, 511 So. 2d 902, 906 (Miss. 1987). "'Fairly debatable' is the antithesis of arbitrary and capricious." ***Id***.

¶11. The Court has set forth certain requirements that must be met for rezoning:

> The courts presume that comprehensive zoning ordinances adopted by municipal authorities are well planned and designed to be permanent. Before property is reclassified from one zone to another, there must be proof either, (1) that there was a mistake in the original zoning or, (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning. Furthermore, an applicant seeking rezoning must prove by clear and convincing evidence either (1) or (2) above.[1]

***Cloverleaf Mall, Ltd. v. Conerly***, 387 So. 2d 736, 740 (Miss. 1980) (citations omitted).

¶12. The Court has never considered a case such as this where a zoning change was taken up without the filing of a petition or application. However, the clear and convincing evidence burden of proof in support of the change in zoning is still required.

¶13. Sea Lands argues that the rezoning in this case was arbitrary and capricious because the Town of Florence initiated the rezoning. However, Miss. Code Ann. § 17-1-15 (1995) clearly states that the governing authority of a municipality may amend, supplement, or change zoning ordinances provided that there is a properly noticed hearing. There is no question that the interested parties and concerned citizens were allowed to present evidence at a public hearing. Florence is authorized to make or change zoning ordinances, and its unilateral decision in this case does not automatically create a presumption that the decision of the Board of Aldermen was arbitrary and capricious.

**I. Whether the circuit court erred when it found that there was no mistake in the 1977 rezoning sufficient to justify the current rezoning.**

¶14. Florence first asserts that its rezoning decision is proper because mistakes were made when the zoning was changed from R-1 to R-2. Florence supports this proposition stating that its governing authorities have no record of notice being given, a public hearing being held, or an adoption of the 1977 rezoning ordinance. These mistakes were recited as justification for changing the zoning of the subject property back to R-1. Florence relies on ***Luter v. Oakhurst Assocs., Ltd.***, 529 So. 2d 889 (Miss. 1983), for the rule that a

municipal ordinance will be invalid if the procedural prerequisites have not been enacted according to statutory law. In *Luter*, Tylertown adopted a zoning ordinance, but failed to have it read aloud at a public meeting or had a roll call before enactment. The Court concluded that "[t]he official action of the governing authorities of a municipal corporation in this state are presumed valid, albeit rebuttably so." *Id.* at 894 (citations omitted). The Court further opined:

> Before any court will consider invalidation of the action of a municipal board for failure to comply with such formalities, the opponents must demonstrate affirmatively that the formalities were not met. Put otherwise, there is a rebuttable presumption that all formalities incident to such action were complied with, and we will certainly not presume to the contrary merely because the resolution of the Mayor and Board did not recite the literal dotting of each "i" and the crossing of each "t."

*Id.* In *Luter*, the Court held that the zoning was valid after acknowledging that there was a public hearing and notice of such, thereby satisfying the statutory requirements.

¶15. In the case sub judice there was, as in *Luter*, a "substantial failure to conform to the law's regularities." 529 So. 2d at 894. The minutes of the meeting in 1977 when the property was rezoned include only the following language: "Mr. Clark also recommended that the 11 ½ acres on Old 49 North adjacent to the old town limits be re-zoned from R-1 to R-2. A motion was made by Alderman Boteler and second [sic] by Alderman Bradshaw approving this recommendation. Motion carried." A search of the newspaper records shows no publication of a hearing to consider the adoption of the new zoning. No formal ordinance adopting a new zoning regulation was ever adopted by the Board. Despite the lack of formalities, the circuit court found:

> It is obvious to me, that everyone always considered the property to be classified as R-2. There is nothing in the record with [sic] indicates otherwise. In fact, the proceeding from which this appeal was taken in [sic] cast in the posture of "a hearing to rezone." Rezoning necessarily implies a change from an existing use district classification to another and in this case that existing classification is clearly acknowledged by all to be R-2.

¶16. Clearly, the statutory formalities were not followed in 1977 to rezone the subject property. However, this "substantial failure to conform to the law's regularities" is not sufficient justification for the Board's decision to rezone due to a mistake in the original zoning (or rezoning, in this case). In *Luter*, the Court considered an action by the Board in terms of a zoning *ab initio*. In that case, the Board proceeded under the assumption that the original zoning was null and void, and, therefore, it did not act under the guise of rezoning. The Court stated, "[w]e will not indulge in idle speculation what their decision would have been had they had before them the correct -- and quite different -- change or mistake in rezoning criteria." This case is easily distinguished from a case of mistake in zoning or rezoning. This Court has held that "a mistake within the meaning of the law is not a mistake of judgment, but, rather, a clerical or administrative mistake." *City of New Albany v. Ray*, 417 So. 2d 550, 552 (Miss. 1982). In this case, Florence has failed to prove that there was a clerical or administrative mistake. The failure to follow statutory requirements in this case does not remove the rebuttable presumption that Florence rezoned the subject property deliberately and thoughtfully. The precedent of this Court does not allow procedural formalities to qualify as a mistake that justifies rezoning. This is especially true in this case, where evidence showed that Florence had adopted a Comprehensive Plan less than two years before the proposed rezoning that confirmed that the use of the subject property was for multi-family residences. This Court has recognized the importance of a

municipality's decision regarding the Comprehensive Plan, a legislative function statutorily assigned. *See* Miss. Code Ann. § 17-1-11 (1995). We have stated:

> The zoning statutes of this state contemplate the adoption by each municipality of a comprehensive zoning plan. The plan should be designed to bring about "coordinated physical development" of the community "consistent with its present and *future* needs." Properly designed, the comprehensive plan contemplates a dynamic community. It recognizes the inevitability of change. Its goal is orderly change, balancing the community's growth needs and the individual's interest in using his property as he sees fit.

*Broadacres, Inc. v. City of Hattiesburg*, 489 So. 2d 501, 503 (Miss. 1986) (quoting *Woodland Hills Conservation Ass'n v. City of Jackson,* 443 So. 2d 1173, 1179 (Miss. 1983) (citations omitted) (emphasis in original)). There is a strong presumption, therefore, that a municipality carefully considered its current and future needs when adopting its plan for development. The decision to change such a plan a mere two years after its adoption is suspect.

¶17. This Court has never sanctioned a rezoning because of procedural informalities, and the circuit court's decision in this case is not erroneous on this issue.

### II. Whether the circuit court erred in its finding that the decision to rezone the subject property was arbitrary and capricious because there was not clear and convincing evidence that there was a material change in the character of the neighborhood and a public need for rezoning.

¶18. Alternatively, Florence asserts that its decision to rezone the subject property was proper because that decision was based on substantial evidence that the character of the neighborhood had changed and a public need existed for rezoning. To support its decision, Florence shows that its decision was first based on a finding by the Commission that the character of the Virginia Street neighborhood had materially changed, which finding was supported by testimony of the residents of the neighborhood who testified about dangerous traffic conditions that had developed in the vicinity of the subject property.

¶19. Other evidence of the need for rezoning cited by Florence is as follows: (1) The Traffic Engineer and Chief of Police indicated that traffic had increased on Old Highway 49, and that increased traffic presents a significant safety problem. Further, the construction of multi-family dwellings allowed by an R-2 zone would add to the safety concerns of the area. (2) The owner of the remaining property subject to the rezoning (all except that owned by Sea Lands) desired R-1 zoning. (3) There had been many accidents near the Virginia Street/Old Highway 49 intersection due to a crest in the road that causes low visibility and increased density from multi-family dwellings would heighten the danger. (4) Erosion had made Virginia Street, a dirt road, a single lane at some points, making it unsafe and not conducive to increased traffic. (5) Surrounding property owners were in favor of R-1 zoning because they believed construction of a multi-family dwelling would decrease their property values. (6) The Comprehensive Community Plan adopted in 1994 specified that R-2 developments should be in desirable R-2 locations, and, due to changing public needs, the subject property was not a desirable R-2 location. (7) In the approximate 19 years that the property had apparently been zoned R-2, no multi-family dwellings had been constructed, but there had been many single-family homes built in the surrounding areas.

¶20. By contrast, Sea Lands presented expert testimony that Florence's Comprehensive Plan included

multi-family dwellings, which were in great demand. The testimony also showed that there had been no material change in the character of the neighborhood, but only some concerns over traffic and safety conditions. Likewise, the circuit court found that traffic is to be "considered, weighed, and balanced along with all other relevant factors," but was not a dispositive issue. *See Woodland Hills,* 443 So. 2d at 1185. The circuit court thus concluded than an increase in traffic did not reflect a substantial change in the character of the neighborhood. Given that Florence had adopted a Comprehensive Plan just two years prior to this rezoning decision that clearly contemplates the need for multi-family dwellings, the circuit court found that Florence could prove neither substantial change nor public need.

¶21. In *Woodland Hills*, the Court addressed what changes could be fairly characterized as substantial. There the Court considered the fact that areas surrounding the land which was proposed to be changed from residential to commercial had recently been rezoned to commercial. The party opposing the rezoning argued that the City had failed to give proper consideration to the increase in traffic congestion that would result from a commercial zoning. The Court concluded:

> Suffice it to say that the traffic issue is one which, on the record presented to us, is fairly debatable. The proceedings before the City Council make it clear that traffic was seriously considered, weighed and balanced along with all other relevant factors. The Council then exercised its legislative discretionary powers and ordered the rezoning. We cannot say that their action was arbitrary, unreasonable and capricious.

443 So. 2d at 1185.

¶22. The Court further addressed the issue in *Board of Aldermen v. Conerly*, 509 So. 2d 877 (Miss. 1987). In that case the Court said:

> When a local governing board is presented a request to reclassify property from one zone to another, if there has been a change in the neighborhood and if there is a public need therefor, evidence to support it should not be difficult to produce. To support on appeal a reclassification of zones, the record at a minimum should contain a map showing the circumstances of the area, the changes in the neighborhood, statistics showing a public need, and such further matters of proof so that a rational, informed judgment may be formed as to what the governing board considered. Where there is no such proof in the record we must conclude there was neither change nor public need.

*Id*. at 886. The Court there concluded that the city had failed to show a substantial change in the neighborhood or a public need. Evidence included a proposal for luxury townhouses to be built in the area originally zoned R-1. It was further shown that there had recently been several multi-family dwellings built in Clinton, although there was still available land for construction in those R-2 zones. Public need was demonstrated by pointing out that families could not afford to build single-family residences at the then current price. The petitioner in that case also alleged that construction of the townhouses would create a buffer zone, or a transitional zone, between existing single-family residences and multi-family residences.

¶23. The *Board of Aldermen v. Conerly* Court began its analysis by quoting *W.L. Holcomb, Inc. v. City of Clarksdale*, 217 Miss. 892, 65 So. 2d 281, 284 (1953):

> All presumptions must be indulged in favor of the validity of a zoning ordinance if it is within the legislative power of the city. Such an ordinance is presumed to be reasonable and for the public good.

> The presumption of reasonableness must be applied to the facts of the particular case, and it applies to re-zoning as well as to the original zoning regular zoning regulation, *but not with the same weight, the presumption being that the zones are well planned and arranged to be more or less permanent, subject to change only to meet a genuine change in conditions.*

509 So. 2d at 883 (emphasis in original). The Court, then, has traditionally placed a clear and convincing burden of proof on a party seeking rezoning. A finding of no sufficient proof will lead this Court to conclude that the Board's decision was arbitrary and capricious. *See **id**.* at 883-86.

¶24. While it is impossible to articulate or design a particular test for determining what is sufficient evidence to show a material change and a public need to support rezoning, it does not appear that in this case Florence was presented with such evidence. Expert testimony at the hearing reflected such and evidenced the need for affordable multi-family housing, as contemplated by the recently adopted Comprehensive Plan. In addition, there was no substantial evidence showing that areas surrounding the subject property had been recently rezoned or that there were statistics or mapped circumstances of a growing change in the neighborhood. Florence was presented with some evidence that there had been several single-family residences built in the area since the 1977 rezoning, although there was no real quantification of that construction. There were no maps or charts proving the number of homes constructed, or their location or impact upon the character of the neighborhood. *See **id**.* at 877. There was no substantial evidence to support Florence's decision that the subject property was unsuited to the construction of multi-family residences, or that there was a need for additional land to construct single-family residences. Without comparable evidence, there can be no showing of a material change in the neighborhood.

¶25. In support of the rezoning, Florence showed only that there were some traffic and safety concerns. There was a suggestion at the hearing that there were better ways to deal with a dangerous intersection and increased traffic concerns short of rezoning, but there was no suggestion that Florence had considered alternatives to rezoning to protect its citizens' health, safety, and welfare. While Florence must be applauded for its stated concerns to prevent a worsening of the current situation, absent any immediate threat, that concern would be more convincing if Florence were attempting to address the apparent and obvious problem that is already extant. Obviously there is a public need, but it is not a significant need for rezoning.

¶26. Given this Court's precedent and the facts of this particular case, Florence's decision to rezone based on a material change in the character of the neighborhood and a public need was arbitrary and capricious as it was not based on substantial evidence, and the circuit court's decision to reverse that decision was not erroneous.

### III. Whether the circuit court erred when it found that Florence should be equitably estopped from rezoning the subject property.

¶27. Sea Lands argues that Florence should be equitably estopped from rezoning because Sea Lands relied to its detriment on the existing zoning. Indeed, the circuit court based its decision to reverse the Board's decision to rezone almost exclusively on the finding of equitable estoppel. The court cited to the 1957 case of ***Walker v. City of Biloxi***, 229 Miss. 890, 92 So. 2d 227, 229 (1957). In that case, Walker was charged with operating a commercial business in a residentially zoned neighborhood in violation of the city ordinance. Walker defended the charge by alleging that the ordinance was never officially adopted, as that ordinance was procedurally defective according to the statutory requirements for adopting such an ordinance. The Court held Walker was in violation of the ordinance and that she was estopped from

operating her business, as that ordinance had long been recognized and acted upon by the citizens and city alike. Specifically, the Court explained that "Waiver, estoppel or laches may operate under certain circumstances to preclude relief against zoning ordinances or regulations. This may be true with respect to defects and irregularities in the mode of enactment of a zoning ordinance." 229 Miss. at 895, 92 So. 2d at 229. The Court quoted extensively from other jurisdictions which had found similarly:

> For twenty-one years the public acquiesced in and permitted the exercise of authority, under the Zoning Ordinance, throughout the City. During this time and in reliance upon the validity of the ordinance there have been changes in conditions involving extensive property interests. An adjudication that the ordinance never took effect, because of the failure to strictly comply with the statute requiring its publication after its adoption, would result in much confusion and loss. Such a sacrifice should not be demanded upon merely technical grounds. Under the circumstances the doctrine of estoppel is applicable. After such long acquiescence by the public with the results above stated, no one may contend the ordinance never took effect because of irregular publication.

229 Miss. at 896, 92 So. 2d at 229 (quoting *City of Creston v. Center Milk Prods. Co.*, 51 N.W.2d 463 (Iowa 1952)). The circuit court went on to quote *Mayor & Comm'rs v. Wheatley Place, Inc.*, 468 So. 2d 81, 83 (Miss. 1985), where this Court concluded that "[p]urchasers of small tracts of land invest a substantial portion of their entire lifetime earnings, relying upon a zoning ordinance. Without the assurance of the zoning ordinance, such investments would not be made." In fact, the Court further opined that "an amendment to a zoning ordinance is not meant to be easy. Otherwise, it would be a meaningless scrap of paper." Thus, the circuit court found that "this remark underscores the Court's appreciation of the municipal obligation to create and maintain an atmosphere of stability in which a person acting in reliance on an existing Ordinance may do so with confidence that the rules will not be changed in the middle of the game."

¶28. Florence relies on the case of *City of Jackson v. Bridges*, 243 Miss. 646, 139 So. 2d 660 (1962), to support its position that it should not be equitably estopped from rezoning the subject property. There the Court said "[z]oning is not static, and zoning restrictions are subject to change. Thus a municipality may amend its zoning ordinance whenever it deems conditions warrant such change." *Id*. at 654, 139 So. 2d at 663 (quotations omitted). However, the Court prefaced that remark including, "One who plans to use his property in accordance with existing zoning regulations is entitled to assume that the regulations will not be altered to his detriment unless the change bears a substantial relation to the public health, safety, morals, comfort, or general welfare." *Id***.** (quotations omitted).

¶29. Florence also emphasizes that Sea Lands has not proven any detrimental reliance in this case. Equitable estoppel requires that parties seeking equity present evidence that (1) they believed and relied on some representation, (2) they changed their position as a result of that belief or reliance, and (3) there is some detriment or prejudice resulting from the reliance. *Suggs v. Town of Caledonia*, 470 So. 2d 1055, 1057 (Miss. 1985). Florence argues that Sea Lands has not proven that it relied to its detriment or that it has suffered any detriment from rezoning, as it has never constructed or attempted construction on the subject property since it was purchased in 1986.

¶30. Sea Lands has implicitly stated its intention to build a multi-family dwelling on the property in question, and presented testimony at the hearing to the effect that the property value would decrease if it was restricted to only single-family residences. There has been an adequate showing of reliance on the zoning that was in effect for some nine years before Sea Lands purchased a parcel of the property subject to

rezoning. The circuit court's decision to reverse the rezoning decision based on equitable estoppel is not erroneous.

## CONCLUSION

¶31. Although there were some procedural irregularities in the 1977 rezoning of the subject property, the Town of Florence has failed to show that its decision to rezone the subject property in 1996 was based on substantial evidence. Sea Lands has adequately demonstrated detrimental reliance, and Florence is thus estopped from rezoning the subject property. Therefore, the judgment of the Circuit Court of Rankin County is affirmed.

¶32. **AFFIRMED**.

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., MILLS, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**

1. The standard of review for rezoning is different from original zoning. When a municipality makes an *ab initio* zoning designation, that decision is "protected from judicial review by the fairly debatable rule." *Luter v. Oakhurst Assocs., Ltd.*, 529 So. 2d 889, 895 (Miss. 1988).