# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00601-SCT

*MICHAEL L. BRIDGE*

*v.*

*MAYOR AND BOARD OF ALDERMEN OF THE CITY OF OXFORD, MISSISSIPPI, LUCY LYNN ROBINSON, MARY SUE ROBINSON AND RALPH COLEMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2007 |
| TRIAL JUDGE: | HON. ROBERT WILLIAM ELLIOTT |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JERRY L. MILLS |
| ATTORNEYS FOR APPELLEES: | PAUL BOWIE WATKINS, JR. |
| | POPE SHANNON MALLETTE |
| | JOYCE MARIE FREELAND |
| | THOMAS HENRY FREELAND, IV |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/11/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     This case requires this Court to determine whether the trial court erred by affirming the decision of the City of Oxford Board of Aldermen (the City) to rezone a portion of the Rice Street neighborhood from RB (multi-family residential) property to R1A (single-family residential) property.[1]

---

[1]  The City of Oxford and the intervenors collectively will be cited as "the City."

¶2. In May 2005, a group of individuals, including Lucy Robinson and others, applied for an amendment to the zoning map of the City of Oxford. These petitioners included property owners affected by the rezoning as well as property owners adjacent to the property at issue. A public hearing for the petition was conducted before the Oxford Planning Commission. Michael L. Bridge, an owner of RB property subject to the rezoning, contested the petition for an amendment to the zoning map.

¶3. The trial court's order gave some background history of the neighborhood's zoning. The trial court held:

> In 2004, the City adopted its comprehensive plan. Under the plan the north side of Price Street was zoned RB. In May, 2005, Lucy Robinson and others filed a petition with the Oxford Planning Commission requesting a zoning amendment to have a portion of Price Street rezoned from RB (multi-family residential) to R1A (single[-]family residential). The thrust of the petition was that Price Street had remained a traditional single-family residential neighborhood and an error had been made by designating the area RB (multi-family residential) rather than R1A (single-family residential). The matter was heard before the Planning Commission in July, 2005 and died for a lack of a motion.

¶4. After the petition died at the July 2005 hearing, the petitioners appealed to the Board of Aldermen. On October 4, 2005, after numerous meetings, the Board approved the rezoning of the property from RB (multi-family residence) to R1A (single-family residence). Following this decision, Bridge appealed to the Circuit Court of Lafayette County.

¶5. The trial court granted leave for Lucy Lynn Robinson, Mary Sue Robinson, and Ralph Coleman to intervene in the suit. The trial court conducted a hearing on February 27, 2007,

2

and affirmed the Board's rezoning decision on March 19, 2007. Bridge then appealed to this Court.

## DISCUSSION

¶6.     This Court set forth the appropriate standard of review in *Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1223-1224 (Miss. 2000), by stating:

> This Court has held that zoning is not a judicial matter, but a legislative matter. *Luter v. Hammon*, 529 So. 2d 625, 628 (Miss. 1988). On appeal, the decision of the Board must be upheld unless it is "arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991). Therefore, the decision to rezone will not be disturbed where it is "fairly debatable." *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987). "'Fairly debatable' is the antithesis of arbitrary and capricious." *Id*.

In addition, this Court enumerated the requirements for rezoning by stating:

> The courts presume that comprehensive zoning ordinances adopted by municipal authorities are well planned and designed to be permanent. Before property is reclassified from one zone to another, there must be proof either, (1) that there was a mistake in the original zoning or, (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning. Furthermore, an applicant seeking rezoning must prove by clear and convincing evidence either (1) or (2) above.

*Town of Florence*, 759 So. 2d at 1223-1224 n.1; *City of Oxford v. Inman*, 405 So. 2d 111, 113 (Miss. 1981); *Mayor & Bd. of Aldermen v. Estate of Lewis*, 963 So. 2d 1210, 1214 (Miss. Ct. App. 2007).

### I.     Requirements for rezoning.

¶7.     Bridge argues that the trial court erred in finding that rezoning was justifiable on the grounds of mistake and a change in character of the neighborhood. As this Court finds that

3

there was no error in the trial court's determination that the rezoning was justifiable on the issue of mistake, we need not address the issue of change in character of the neighborhood.

¶8.     Bridge argues that if a mistake was made by the Board, it was either because (1) Board members did not know what they were voting for; or (2) they changed their minds about how they should vote.  Bridge claims that neither of these two reasons justifies rezoning.

¶9.     The City argues that a local zoning authority can amend its zoning ordinance when there is a clerical or administrative mistake, but not a mistake in judgment.  The City admits that a color-coding mapping error occurred for twenty lots in the Price Street area and was a clerical or administrative mistake.

¶10.    This Court has held that "a mistake within the meaning of the law is not a mistake of judgment, but, rather, a clerical or administrative mistake." *New Albany v. Ray*, 417 So. 2d 550, 552 (Miss. 1982).

¶11.    The trial court stated:

> Since the early 1970's, the record indicates that both the north and south sides of Price Street were zoned RB (multi-family residential).  When the comprehensive plan was adopted, a majority of the lots in the south side of Price Street were zoned R1A (single[-]family residential) but the north side of Price Street remained RB.  The lots on the north and south sides of Price Street are similar, single-family houses on small lots.  The record is clear that there were similar mistakes in the comprehensive plan where neighborhoods had been incorrectly zoned and these mistakes were subsequently corrected.
>
> It is entirely understandable that in the development of a comprehensive plan of this magnitude mistakes would be made which would require corrections. The Court realizes that in order to reclassify property on the criteria of a mistake in the original zoning that the mistake must not be a mistake of

4

judgment, but rather a clerical or administrative mistake. ***Town of Florence [v.] Sea Lands, LTD***, 759 So. 2d 1221 (Miss. 2000).

The Court is of the opinion that the record clearly reflects that the error in failing to rezone the Price Street property as R1A (single[-]family residential) was not a mistake of judgment but one of omission or oversight. The issue of mistake is fairly debatable.

¶12. A number of Board members stated at the September 6, 2005, meeting that the zoning was a mistake.[2] Alderman Jon Fisher stated that he did not know why the Board "missed" the strip of houses in the Price Street neighborhood. He explained that the Board had downgraded a number of areas to protect the single-family character of Oxford and because the homes or structures in the neighborhoods did not comply with the zoning. In addition, Fisher stated that the Board should have done the same thing to Price Street. Alderman Ulysses Howell stated that "if I had known that [Price Street] was zoned like this, I would have never – would have went and I'm willing to – when the time come, I'm willing to make the motion to rezone it."

¶13. Alderman Janice Antonow stated:

One has to do with this need to show a change in the neighborhood. We made a change in the neighborhood when we adopted the comprehensive plan. We changed the zoning in property adjacent to this property on Price Street. We changed it from RA to RE. That is a change in that neighborhood.

We changed the zoning of the property directly across the street. It was RB; and we changed it to RN. So we upgraded the zoning in all the property adjacent to this property that's up for rezoning, and yet we overlooked that strip of houses on Price Street.

---

[2] Alderman Pat Patterson recused himself from the proceedings.

And I apologize. I feel that – like some of the rest of us do, that we dropped the ball. If I had seen this, I would never have allowed an RB zoning to be sandwiched between RA and RE. It doesn't even make any sense.

The Board voted unanimously to rezone the Price Street property.

¶14. We find that the testimony of the Board members shows that the Board made an administrative mistake by not including all of the Price Street neighborhood in the rezoning. The Board had an objective in the comprehensive plan and merely overlooked the portion of Price Street at issue. The testimony of the Board showed that the members were not aware of the fact that the RB zoning remained in effect after the zoning. The trial court did not err by finding that the issue of mistake was fairly debatable.

### II. Compliance with the comprehensive plan.

¶15. Bridge contends that the future land-use map contained in the comprehensive plan provides the clearest guidance for contemplated future development of the subject property. Bridge argues that the zoning ordinance should be in compliance with the comprehensive plan at the time the zoning ordinance is passed. He argues that the City is rewriting the ordinance to comply with only one of the four elements of the comprehensive plan. As authority, Bridge relies on Mississippi Code Annotated Section 17-1-1 (Rev. 2003), which sets forth the definition of a comprehensive plan (including, as a minimum, the goals and objectives, land-use plan, transportation plan, and community-facilities plan) and Mississippi Code Annotated Section 17-1-9 (Rev. 2003) which states, in part, that "[z]oning regulations shall be made in accordance with a comprehensive plan." Therefore, Bridge argues that the trial court erred by finding that the rezoning was in compliance with the comprehensive plan.

6

¶16.   The City contends that the rezoning was consistent with the goals of the comprehensive plan.  In addition, the City argues that it is not required to amend its future land-use plan before amending the zoning ordinance.  Further, the City contends that Bridge bases his argument on the fact that the future land-use map in the 2004 comprehensive plan shows the property as RB.

¶17.   The trial court stated:

> Zoning regulations must be made in accordance with a comprehensive plan[.] Sec. 17-1-9, Miss. Code Ann. (1972).  The Comprehensive Plan of the City of Oxford of October 7, 2004 clearly places as a priority the preservation of the physical character and social fabric of Oxford neighborhoods.  The action of the Board of Aldermen in rezoning Price Street was compatible with the purposes and goals of the comprehensive plan.

¶18.   We find that the record reveals that the City's comprehensive plan was not amended to comply with the rezoning of a portion of the Price Street neighborhood from RB property to R1A property.  At the hearing, the City admitted that the comprehensive plan was not amended to comply with the zoning change, however, the City maintained that it would amend the comprehensive plan if the zoning change was permitted.

¶19.   We find that the zoning statutes do not specify that a future land-use map, which is part of a comprehensive plan, must be amended before a zoning ordinance amendment. Mississippi Code Annotated Section 17-1-1 to -39 (Rev. 2003) provides for amendments and changes to be made to comprehensive plans and zoning ordinances.  Furthermore, Mississippi Code Annotated Section 17-1-11(1)(a) provides that a governing authority of a municipality and county may provide for the amendment of a comprehensive plan.

Mississippi Code Annotated Section 17-1-11(2) provides, in part, that the "governing authority of each municipality and county may adopt, amend and enforce the comprehensive plan, zoning ordinance" after a public hearing as provided by Section 17-1-15. Further, Mississippi Code Annotated Section 17-1-15 provides that "[t]he governing authority of each municipality and county shall provide for the manner in which the comprehensive plan, zoning ordinance (including the official zoning map) . . . shall be determined, established and enforced, and from time to time, amended, supplemented or changed." *See also* Miss. Code Ann. § 17-1-17 (Rev. 2003). The statutes contemplate necessary amendments to comprehensive plans and zoning ordinances.

¶20. Bridge also argues that the City, in effect, is rewriting the ordinance to state that the zoning regulations should be made in accordance with one of the four elements of the comprehensive plan. Indeed, the City argues that the rezoning was consistent with the goals as set forth in the comprehensive plan. We agree.

¶21. We find that the lots in the Price Street neighborhood at issue are all part of the "Neighborhood Conservation Zone" as specified in the City's 2004 comprehensive plan. The comprehensive plan set forth the community character and its perspective and stated that "[m]aintaining and enhancing the vibrant physical and social character of Oxford is the challenge at the core of this planning effort." Further, the comprehensive plan sets forth the "Oxford Guiding Principles" which "establish six fundamental urban designs and planning principles for Oxford's future growth." The first principle is to "[r]ecognize Oxford's historic ways of town building and use those traditions to provide a framework for future

8

growth." The goal of the comprehensive plan is to "[c]onserve and enhance those attributes that define Oxford's special community character and the cultural heritage of Oxford's historic neighborhoods." In addition, the objective for neighborhoods is to "[p]rotect the physical character and social fabric of Oxford's neighborhoods." We find that the rezoning is in keeping with the comprehensive plan, or at the very least, the matter is fairly debatable.

¶22. While Bridge contends that the City is rewriting the comprehensive plan to include only one of the four elements, the goals and objectives, he fails to contemplate the amendment process permitted by statute. Further, he asks this Court to consider only one part of the comprehensive plan, that being the land-use plan. Notwithstanding his argument and without reiterating the previous discussion of the issue of mistake in Section I and the statements of the Board members, we find that Bridge's argument fails to recognize that, among other things, the Board made a mistake in zoning which necessitated a change in the zoning ordinance. At the time the 2004 comprehensive plan was adopted, the comprehensive plan appeared to be in compliance with the zoning regulations. Once the Board realized the mistake, it began to rectify it. Accordingly, we find that the trial court did not err by finding that the rezoning is compatible with the comprehensive plan.

## CONCLUSION

¶23. For the foregoing reasons, the judgment of the Lafayette County Circuit Court is affirmed.

¶24. **AFFIRMED**.

9

**WALLER AND DIAZ, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. SMITH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, J. LAMAR, J., NOT PARTICIPATING.**

**SMITH, CHIEF JUSTICE, DISSENTING:**

¶25. I cannot agree with the majority's conclusions and must therefore dissent. First, to allow the City of Oxford Board of Aldermen ("City") to justify a zoning amendment because they did not realize what they were voting for initially threatens the very bedrock of our society. Second, the trial court and the majority misapply the standard for reviewing a change in the character of the neighborhood and thus reach a flawed result. Finally, the majority simply ignores this Court's precedent by allowing the zoning amendment despite its inconsistency with the land-use map. I would reverse the circuit court's judgment and render the zoning ordinance invalid. For these reasons, I must respectfully dissent.

**Mistake**.

¶26. "There is a strong presumption . . . that a municipality carefully considered its current and future needs when adopting its plan for development. The decision to change such a plan a mere two years after its adoption is suspect." *Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1225 (Miss. 2000).

¶27. In the present case, City first zoned the subject property as RB (multi-family residential) in 1971. In 2004, when City adopted its comprehensive plan, City affirmed the subject property's designation as RB. A mere six months later, appellants applied for the

10

zoning amendment, which the City granted in October of 2005. In light of this Court's guidance in *Sea Lands*, such actions are "suspect."

¶28. In *Sea Lands*, this Court failed to find a basis for mistake due to the governing authority's failure to give notice, hold a public hearing, or properly adopt a zoning ordinance. *Sea Lands*, 759 So. 2d at 1224. But in *Ballard v. Smith*, 234 Miss. 531, 540, 107 So. 2d 580, 583 (Miss. 1958), this Court recognized that a discrepancy between a date on a map and a date contained within an ordinance was a mere clerical error which provided a basis for mistake.

¶29. While the aldermen now maintain that the zoning of the subject property as RB was a mistake, this is not the kind of mistake contemplated by this Court's zoning precedent. Legislative comments such as "should have," "would have," and "if I had known" do not justify a "do-over" under the guise of mistake.

**Land-Use Map Should be Controlling.**

¶30. The majority recognizes that the most recent zoning change did not comply with the future land-use map, which was part of the City's 2004 comprehensive plan, but affirms the trial judge's determination that the zoning change complied with the comprehensive plan. I cannot agree.

¶31. Mississippi Code Annotated Section 17-1-9 states in part that "[z]oning regulations **shall** be made in accordance with a comprehensive plan." (Emphasis added). Furthermore, in *Barbour v. Gunn*, 890 So. 2d 843 (Miss. 2004), this Court held that a map was controlling where it was attached to an inconsistent Joint Resolution of the Mississippi Legislature.

11

¶32. I recognize that where a zoning map reflects the current zoning, any amendment necessarily conflicts with the map. In order to avoid this inconsistency the governing authority should seek contemporaneously to amend both the zoning and any land-use map. Such action would allow the governing authority to exercise its liberal powers granted in Mississippi Code Annotated Section 17-1-11(2) in adopting and amending the comprehensive plan and zoning ordinances, while complying with Mississippi Code Annotated Section 17-1-9's mandate that zoning regulations be made in accordance with a comprehensive plan.

¶33. For the above-stated reasons, I cannot agree with the majority's opinion to affirm. It is inappropriate to allow the aldermen simply to change their vote because they failed to appreciate the consequences of their votes when cast. Such a failure does not represent a mistake for the purposes of justifying a zoning change. Finally, where a governing authority's comprehensive plan includes a land-use map, I would require any zoning amendment to occur contemporaneously with the amendment of any land-use map. Accordingly, I respectfully dissent.

**DICKINSON, J., JOINS THIS OPINION.**