# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00760-COA

**LAURA B. WHITE, LMK LLC, MARY S. BELL, MARGARET COPELAND, AND BETTYE BELL**                                                **APPELLANTS**

**v.**

**CITY OF STARKVILLE, MISSISSIPPI, AND GOLDEN TRIANGLE DEVELOPMENT LINK**                                                **APPELLEES**

DATE OF JUDGMENT:          05/16/2017
TRIAL JUDGE:          HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED:     OKTIBBEHA COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:     G. DEWEY HEMBREE III
          TAYLOR ALLISON HECK
ATTORNEYS FOR APPELLEES:     CHRISTOPHER JAMES LATIMER
          LISA ANDERSON REPPETO
          CHRISTOPHER STEVEN PACE
NATURE OF THE CASE:          CIVIL - OTHER
DISPOSITION:          AFFIRMED: 01/08/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**TINDELL, J., FOR THE COURT:**

¶1. In January 2017, the Starkville Board of Aldermen (the Board) approved an application filed by the Golden Triangle Development LINK (the LINK)[1] on behalf of the City of Starkville (the City) to rezone approximately 360 acres. Laura B. White, LMK LLC, Mary Bell, Margaret Copeland, and Bettye Bell (collectively, the Appellants), whose property adjoined the newly rezoned land, unsuccessfully appealed the Board's decision to

---

[1] The LINK is a regional economic development organization tasked with recruiting manufacturers to Lowndes, Clay, and Oktibbeha Counties.

the Oktibbeha County Circuit Court. On appeal to this Court, the Appellants argue that the LINK failed to support its rezoning application with clear and convincing evidence and that the rezoning failed to comply with the City's comprehensive plan.

¶2. Finding no error, we affirm the circuit court's judgment upholding the Board's rezoning decision.

## FACTS

¶3. On the City's behalf, the LINK filed an application with the Starkville Planning and Zoning Commission (the Commission) to rezone about 360 acres of land from "general business" and "residential" to "manufacturing" for use as a proposed industrial park. On December 13, 2016, the Commission voted to recommend approval of the application with two conditions: (1) the City would require a buffer between the land rezoned for manufacturing and any land zoned for other uses; and (2) the property would revert to its original zoning designation if the industrial-park project failed to move forward. On January 3, 2017, the Board conducted a public hearing on the Commission's recommendation. By a vote of 6 to 1, the Board voted to approve the LINK's application to rezone the land as manufacturing.

¶4. The Appellants filed a bill of exceptions and appealed the Board's decision to the circuit court. Upon finding sufficient evidence to show that the Board "had a reasonable evidentiary basis to rezone the area in question and that the decision was not arbitrary, capricious, discriminatory, or illegal[,]" the circuit court affirmed the Board's decision.

Aggrieved, the Appellants appeal the circuit court's judgment to this Court.

## STANDARD OF REVIEW

¶5. This Court will only set aside a zoning authority's decision if the decision was "arbitrary, capricious, discriminatory, illegal, or without substantial evidence." *City of Jackson v. Allen*, 242 So. 3d 8, 13 (¶18) (Miss. 2018). We decline to disturb a zoning authority's decision when the matter is fairly debatable. *Wrigley v. Harris*, 161 So. 3d 1114, 1116 (¶6) (Miss. Ct. App. 2015). "'Fairly debatable' is the antithesis of arbitrary and capricious." *Speyerer v. Bd. of Supervisors of Madison Cty.*, 139 So. 3d 771, 774 (¶10) (Miss. Ct. App. 2014). Because a "governing body's decision carries a presumption of validity," the party asserting the decision's invalidity bears the burden of proof. *Id.*

## DISCUSSION

### I. Rezoning Requirements

¶6. Before a zoning authority rezones property, the applicant must show by clear and convincing evidence that either (1) "there was a mistake in the original zoning" or (2) "the character of the neighborhood has changed to such an extent as to justify rezoning[,] and . . . [a] public need exists for rezoning." *Beard v. City of Ridgeland*, 245 So. 3d 380, 388 (¶25) (Miss. 2018). The parties agree they raised no argument before the Board as to a mistake in the subject property's original zoning. Instead, the sole issue before the Board was whether the LINK proved by clear and convincing evidence that the neighborhood's character "ha[d] changed to such an extent as to justify rezoning" and that a "public need exist[ed] for

3

rezoning." *Id.*

¶7.     In previously discussing rezoning decisions, this Court has acknowledged "that 'it is impossible to articulate or design a particular test for determining what is sufficient evidence to show a material change and a public need to support rezoning.'" *Speyerer*, 139 So. 3d at 774 (¶14) (quoting *Madison Citizens Against Rezoning v. Madison Cty. Bd. of Supervisors*, 101 So. 3d 711, 714-15 (¶13) (Miss. Ct. App. 2012)).  Even so, our caselaw clearly establishes that, to support on appeal a zone reclassification, the record should, at a minimum, contain the following:

> [A] map showing the circumstances of the area, the changes in the neighborhood, statistics showing a public need, and such further matters of proof so that a rational, informed judgment may be formed as to what the governing board considered.  Where there is no such proof in the record[,] we must conclude there was neither change nor public need.

*Wrigley*, 161 So. 3d at 1117 (¶9) (quoting *Town of Florence v. Sea Lands Ltd.*, 759 So. 2d 1221, 1227 (¶22) (Miss. 2000)).  A board is not restricted, however, by just the evidence before it.  *Speyerer*, 139 So. 3d at 774 (¶14).  Instead, board members may also "consider 'their own common knowledge and the familiarity with the ordinance area.  Furthermore, hearsay evidence may be admitted and considered by the Board in making its decision.'" *Id.* (quoting *Madison Citizens Against Rezoning*, 101 So. 3d at 715 (¶13)).  This Court will reverse a rezoning decision if a board relies only on "vague references" regarding a change in an area's character.  *See Madison Citizens Against Rezoning*, 101 So. 3d at 715 (¶14).

¶8.     At the Board's January 3, 2017 public hearing, the LINK submitted more than just

4

"vague references" about a change to the character of the neighborhood at issue and the public need for rezoning. In 2005, the State completed both Highway 25 and the Highway 82 bypass near the 360 acres. The LINK provided proof that these completed road projects transformed the land from a primarily undeveloped agricultural area with limited road access into highway-accessible property ideal for commercial and industrial development. The LINK further noted that the City had already "invested a lot of money in the past several years putting adequate water and sewer out to . . . that property capable of serving an industrial park" and that, "other than running lines in along the new street plan for the [proposed] park, [the City would not] have to . . . make any significant upgrades to [the already existing] infrastructure to serve industrial customers with water and sewer."

¶9.    As support for its rezoning application, the LINK submitted the following documents to the Board: (1) maps and aerial photos that showed ongoing and recently completed commercial developments in the area as well as land currently for sale for commercial development; (2) City zoning maps from both 2000 and 2013; (3) a staff report from the City's planning department that discussed the recent changes to the area; (4) a consultant's report that was prepared in conjunction with the City's 2016 comprehensive plan; and (5) a copy of the City's 2005 comprehensive plan that discussed the need for more industrial sites located near the intersection of major highways.

¶10.    The LINK also argued the City had a clear public need for more property zoned for industrial and manufacturing development. The LINK provided the Board with data and

5

statistics on the county's unemployment rate, median household income, and the number of residents living below the poverty level. According to the LINK's data, Oktibbeha County lagged behind most other Mississippi counties as one of the poorest in the State. The consultant's report prepared in conjunction with the City's 2016 comprehensive plan also discussed the area's "socio and economic metrics" and explained how the proposed industrial park would make the area more competitive in economic development and more attractive to employers. Although other industrial-zoned land existed and had been considered for the proposed park, the LINK stated it ultimately concluded these other sites were inadequate for the project. The LINK included two reports in its presentation as support for its contention that the subject property was the only site that could support the proposed industrial park.

¶11. After considering the LINK's presentation materials and their own knowledge of the area, multiple Board members agreed that the completed roadway projects dramatically and significantly changed the nature of the neighborhood and allowed for an increase in commercial development. Further, many of the Board members acknowledged the City's strong need for the industrial development the LINK planned to bring to the area. The Board members recognized that the proposed industrial park could help diversify employment opportunities and provide non-college-educated residents with higher-paying jobs. Based on the evidence before it, the Board found the LINK had shown by clear and convincing proof a sufficient change in the character of the neighborhood to justify rezoning and a public need for the rezoning. Because we find substantial credible evidence to support the Board's

decision and to render the matter fairly debatable, we decline to disturb the Board's decision on appeal.

## II.    Compliance with the Comprehensive Plan

¶12.    The Appellants also contend the rezoning decision failed to comply with the City's 2005 comprehensive plan. Specifically, the Appellants argue the Board's decision (1) resulted in the over-zoning of land for industrial use; (2) contradicted the plan's stated goal of continued "centralization of industrial activities . . . in the southwest area of the [C]ity[;]" and (3) created inadequate separation between industrial-zoned land and land zoned for other uses.

¶13.    Despite the Appellants' assertions, we find the rezoning was consistent with the overall goals of the 2005 comprehensive plan and complied with the subsequently adopted 2016 comprehensive plan. The 2005 comprehensive plan clearly encouraged the location of industrial areas near highways and within an easy commute of the labor force. As previously noted, following the completion of the nearby roadway projects in 2005, the subject land immediately became highway accessible and an ideal location for the LINK's proposed industrial park. Although the Appellants correctly note that the City already had other land zoned for manufacturing, the LINK's evidence showed those sites were inadequate or unsuitable for the proposed park due to their lack of space or power capabilities. The LINK's research further showed the other sites were incapable of sufficient modification to fix the deficiencies. According to the LINK, the subject property was the only site that could

7

conceivably support the proposed project.

¶14.    As to the Appellants' remaining argument regarding a separation between industrial zoning and other land uses, the evidence again reflects no compliance issue.  The 2005 comprehensive plan directed adequate physical separation between industrial-zoned areas and those areas zoned for other uses, especially residential, **whenever possible**.  As previously discussed, however, the LINK concluded the subject property was the only available land suitable for the proposed industrial park.  In an attempt to address concerns raised by adjoining landowners, the LINK placed several self-imposed conditions on the rezoning.  These conditions included (1) a restriction on the type of businesses that could be located at the industrial park; (2) a requirement for a thirty-foot buffer between the park and one of the roadways; and (3) a prohibition against cutting existing vegetation or trees within the buffer zone, except to the extent needed for road access or public utilities.  In approving the LINK's rezoning application, the City also specifically approved these self-imposed conditions.

¶15.    Upon review, we find the Board's rezoning decision was "in keeping with the comprehensive plan, or at the very least, . . . [a] fairly debatable [matter.]"  *Bridge v. Mayor & Bd. of Aldermen of Oxford*, 995 So. 2d 81, 86 (¶21) (Miss. 2008).  We therefore find this issue lacks merit.

**CONCLUSION**

¶16.    Because the record contains substantial credible evidence to show the Board's

8

approval of the LINK's rezoning application was fairly debatable and complied with the City's comprehensive plan, we affirm the circuit court's judgment upholding the Board's decision.

¶17.    **AFFIRMED.**

**GRIFFIS, C.J., CARLTON, P.J., WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.  BARNES, P.J., McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**